REDACTED - PUBLIC VERSION

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF CONNECTICUT

**Edgewell Personal Care Brands, LLC and**
**International Refills Company Ltd.,**

     **Plaintiffs,**

**v.**

**Munchkin, Inc.,**

     **Defendant.**

**Civ. A. No. 3:16-cv-00094-VLB**

**JURY TRIAL DEMANDED**

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA AND IN SUPPORT OF ITS MOTION, IN THE ALTERNATIVE, TO TRANSFER TO THE DISTRICT OF DELAWARE

REDACTED - PUBLIC VERSION

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.  PROCEDURAL BACKGROUND ........................................................................ 3

III. FACTUAL BACKGROUND ................................................................................ 4

IV. ARGUMENT ......................................................................................................... 15

   A.   Venue is Proper in Connecticut and Munchkin's Motion Should
       be Denied.......................................................................................................... 15

    1.   *TC Heartland* is Inapplicable to the Second Prong of 28 U.S.C.
        § 1400(b). .................................................................................................. 16

    2.   Munchkin Has Committed Acts of Infringement Within the
        District for Purposes of Venue. ............................................................. 17

    3.   Munchkin Has a Regular and Established Place of Business
        in Connecticut. ........................................................................................ 19

       a.   Determining the Existence of a "Regular and Established
           Place of Business." ........................................................................ 19

         i.   *Cordis* Does Not Require a "Fixed Physical Presence." ................... 19

         ii.  District Court Applications of *Cordis* Are Instructive. ........................ 20

       b.   Munchkin Has an Established Place of Business in
           Connecticut. ................................................................................... 22

         i.   Munchkin has a Regular and Established Place of
            Business by Virtue of its Retail Partners and Active Website. .......... 22

       c.   The Court Should Make an Adverse Inference that
           Munchkin Has a Regular and Established Place of
           Business in Connecticut. ............................................................... 25

   B.   If the Court Finds Venue to be Improper in Connecticut,
       Delaware is a More Appropriate Forum than California. ........................... 28

    1.   Venue is Proper in Delaware ................................................................. 29

    2.   The Interests of Justice Favor Transfer to Delaware ......................... 29

       a.   Plaintiffs' choice of forum favors transfer to Delaware ......................... 30

REDACTED - PUBLIC VERSION

    **b.**   **Convenience of witnesses favors transfer to Delaware**........................ 31

      **i.**   **Edgewell Witnesses**.................................................... 31

      **ii.**   **IRC Witnesses** ........................................................ 33

      **iii.**   **Third-Party Witnesses** ......................................... 33

      **iv.**   **Munchkin Witnesses** ........................................... 34

    **c.**   **Location of relevant documents is neutral** ............................................ 35

    **d.**   **Locus of operative facts favors Delaware** ................................................ 36

    **e.**   **Convenience of parties favors Delaware** ................................................ 37

    **f.**   **Parties' relative means is neutral** .............................................................. 38

    **g.**   **Forum's familiarity with governing law is neutral.** ................................ 39

    **h.**   **Trial efficiency and interests of justice weigh in favor of transfer to Delaware.** ................................................................................ 40

**V.**   <u>**CONCLUSION**</u>.................................................................................. 41

REDACTED - PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>CASES</u>

*Adams v. Time Warner*,
　83 F. Supp. 2d 296 (D. Conn. 1999)......................................................................... 30

*Am. Homecare Fed'n, Inc. v. Paragon Scientific Corp.*,
　27 F. Supp. 2d 109 (D. Conn. Oct. 26, 1998)........................................................... 29

*Bouzo v. Citibank, N.A.*,
　96 F.3d 51 (2d Cir. 1996) .......................................................................................... 28

*Centerville ALF, Inc. v. Balanced Care Corp.*,
　197 F. Supp. 2d. 1046 (S.D. Ohio Mar. 18, 2002) .................................................... 19

*Cirrex Sys. LLC v. InfraReDx, Inc.*,
　No. 10 Civ. 3952, 2010 WL 3431165 (S.D.N.Y. 2010) ............................................. 36

*Costello v. Home Depot U.S.A., Inc.*,
　888 F. Supp. 2d 258 (D. Conn. 2012)....................................................................... 40

*Daimler AG v. Bauman*,
　134 S. Ct. 746 (2014) ................................................................................................ 29

*Earley v. BJ's Wholesale Club, Inc.*,
　2007 WL 1624757 (S.D.N.Y. June 4, 2007) ............................................................. 30

*France Telecom S.A. v. Marvell Semiconductor, Inc.*,
　No. 12 Civ. 4986, 2012 WL 6808527 (S.D.N.Y. Dec. 28, 2012) .............................. 36

*Funnelcap, Inc. v. Orion Indus., Inc.*,
　392 F. Supp. 938 (D. Del. 1975) ......................................................................... 17, 18

*Glaxo Grp. Ltd. v. Genentech, Inc.*,
　No. C 10-00675 JSW, 2010 WL 1445666 (N.D. Cal. Apr. 12, 2010) ...................... 31

*In re Air Crash near Nantucket Island, Mass., on Oct. 31, 1999*,
　No. 00-MDL-1344, 2004 WL 1824385 (E.D.N.Y. Aug. 16, 2004) ........................... 27

*In re Cordis Corp.*,
　769 F.2d 733 (Fed. Cir. 1985)........................................................................*passim*

*Indymac Mortg. Holdings, Inc. v. Reyad*,
　167 F. Supp. 2d 222 (D. Conn. Aug. 10, 2001)........................................................ 16

REDACTED - PUBLIC VERSION

*Instrumentation Specialties Co. v. Waters Assocs., Inc.*,
  No. 76-C-4340, 1977 WL 22810 (N.D. Ill. Oct. 12, 1977) ........................................ 24

*Int'l Secs. Exch. v. Chicago Bd. Options Exch. Inc.*,
  No. 6-cv-13445, 2007 WL 1541087 (S.D.N.Y. May 24, 2007) ................................ 38

*Latini v. R. M. Dubin Corp.*,
  90 F. Supp. 212 (N.D. Ill. 1950) ................................................................ 23, 24

*Lever Bros. Co. v. Procter & Gamble Co.*,
  23 F. Supp. 2d 208 (D. Conn. 1998) ........................................................................ 37

*McQuennie v. Carpenters Local Union 429*,
  No. 3:15-cv-00432, 2015 WL 6872444 (D. Conn. Nov. 9, 2015) ........................... 16

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ................................................................................................ 30

*Pitney Bowes, Inc. v. Nat'l Presort, Inc.*,
  33 F. Supp. 2d 130 (D. Conn. 1998) ........................................................................ 38

*Quinn v. Fishkin*,
  117 F. Supp. 3d 134 (D. Conn. Aug. 4, 2015) ......................................................... 16

*Raytheon Co. v. Cray, Inc.*,
  No. 2:15-cv-01554, 2017 WL 2813896 (E.D. Tex. June 29, 2017) ............... *passim*

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d. Cir. 2002) .................................................................................... 28

*Ripmax Ltd. v. Horizon Hobby, Inc.*,
  No. 3:07-cv-386, 2007 WL 2049033 (D. Conn. June 25, 2007) ....................... 37, 38

*San Shoe Trading Corp. v. Converse Inc.*,
  649 F. Supp. 341 (S.D.N.Y. 1986) ..................................................................... 21, 25

*Shelter-Lite, Inc. v. Reeves Bros., Inc.*,
  356 F. Supp. 189, 177 U.S.P.Q. 683 (N.D. Ohio 1973) ......................................... 20

*Sherman Paper Prod. Corp. v. Sorg Paper Co.*,
  161 F. Supp. 44 (E.D. Mich. 1958) ........................................................................ 23

*Speedfit LLC v. Woodway USA, Inc.*,
  53 F. Supp. 3d 561 (E.D.N.Y. 2014) ..................................................................... 40

*Stuebing Automatic Mach. Co. v. Gavronsky*,
  No. 1:16-cv-576, slip op. (S.D. Ohio June 12, 2017) ............................................. 18

REDACTED - PUBLIC VERSION

*TC Heartland LLC v. Kraft Foods Group LLC,*
   137 S. Ct. 1514 (2017) ......................................................................*passim*

*U.S. Commodity Futures Trading Comm'n v. Wilson,*
   27 F. Supp. 3d 517, 537 (S.D.N.Y. June 26, 2014) ................................. 29

*Valentini v. Citicorp. Fin. Servs., Corp.,*
   589 Fed. App'x 1 (2d Cir. 2014) ........................................................... 28

RULES

Fed. R. Civ. P. 37 .................................................................................... 27

STATUTES

28 U.S.C. § 1391 ...................................................................................... 18

28 U.S.C. § 1400(b) .........................................................................*passim*

28 U.S.C. § 1404 ...................................................................................... 29

28 U.S.C. § 1406 ................................................................................. 29, 30

35 U.S.C. § 271 ........................................................................................ 18

REDACTED - PUBLIC VERSION

## I.   <u>INTRODUCTION</u>

**Munchkin's Motion to Transfer Venue is part of a forum shopping strategy by Munchkin to ground this case in the Central District of California.  Immediately following the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group LLC*, 137 S. Ct. 1514 (2017) (Doc. 53 at 1, 5), Munchkin filed a declaratory judgment action in Los Angeles, relating to identical claims before this Court (Doc. 53-3).  Only after Munchkin filed that declaratory judgment action to satisfy itself that it had secured its forum of choice did Munchkin file the instant Motion to Transfer Venue using the pretext that venue is no longer proper in this case because the United States Supreme Court recently changed the law through its decision in *TC Heartland*.**

**Despite Munchkin's urging to the contrary, the Supreme Court's decision in *TC Heartland* does not impact, or even address, the basis for venue in this case. Venue is proper here for the same reasons today as the day Plaintiffs filed their Complaint—because Munchkin has committed acts of infringement in Connecticut and has a regular and established place of business in Connecticut as required by 28 U.S.C. § 1400(b).  In fact, although Munchkin contends in its Motion to Transfer that its "only connection to Connecticut is that it advertises and sells products to consumers throughout the United States, including consumers in Connecticut," the sworn deposition testimony of Munchkin's corporate witness revealed that contention to be false.**

**Munchkin's witness admitted under oath that Munchkin in fact has numerous other contacts with Connecticut sufficient to satisfy the requirements**

1

REDACTED - PUBLIC VERSION

of 28 U.S.C. § 1400(b) such as an active direct-to-consumer retail website shipping products to Connecticut residents, retail partners with brick-and-mortar stores in Connecticut, ████████████████████████████ and a Munchkin brand ambassador residing in Connecticut who directly markets Munchkin's products to residents of Connecticut.[1]

Accordingly, it is clear following the deposition of Munchkin's designated corporate witness on venue that Munchkin has committed acts of infringement in this district and has an established and ongoing presence in Connecticut that is more than sufficient to satisfy the venue requirements of 28 U.S.C. § 1400(b). The Court should therefore block Munchkin's attempt at forum shopping and deny its Motion to Transfer Venue of this case to the Central District of California.

In the unlikely event the Court finds that venue is not proper in the District of Connecticut, this case should be transferred to the District of Delaware, not California. If this case should be transferred, Delaware is the preferred forum of transfer for both Plaintiffs Edgewell and IRC, and Munchkin cannot make the "strong showing" required to upset that choice. The District of Delaware is home

---

[1] When confronted with publicly available information showing even more contacts with Connecticut, Munchkin's designated witness testified that he, in fact, did not know the true extent of Munchkin's business contacts with the State of Connecticut. Following the deposition, Plaintiffs repeatedly requested a knowledgeable deponent who could testify about all of Munchkin's contacts with Connecticut. Munchkin repeatedly refused to provide a witness. Instead, following the deposition, Munchkin submitted two additional self-serving declarations from new witnesses again attempting to minimize Munchkin's contacts with Connecticut and forestall Plaintiff's discovery efforts. Munchkin also refused to produce either of those declarants for depositions. Based on Munchkin's refusal to participate in Court ordered discovery in connection with its venue motion, Plaintiffs request that the Court make an adverse inference against Munchkin as discussed in Section IV(A)(3)(c) below.

REDACTED - PUBLIC VERSION

to, or is located in close proximity to, numerous sources of information relevant to this lawsuit, and is significantly more convenient for the majority of the parties and witnesses as compared to the Central District of California.

For example, the majority of Edgewell employees responsible for the design, development, sales, and marketing of the Diaper Genie System at issue in this case are located in Delaware and Connecticut. Edgewell also maintains some of the records relating to the development of its Diaper Genie Systems in a storage facility in Delaware. Delaware is convenient to important third parties such as the inventors of the patents-in-suit. And while employees from Plaintiff IRC will be forced to travel from Barbados to attend trial, the Central District of California is nearly twice as far (roughly 4,000 miles) from Barbados as compared to the District of Delaware. These and other considerations clearly favor transfer of this action to the District of Delaware, and counsel against transferring the case to the Central District of California.

II.     **PROCEDURAL BACKGROUND**

Plaintiffs filed this case on January 21, 2016, alleging patent infringement against Munchkin for selling and offering for sale its diaper refill rings for Edgewell's Diaper Genie System ("the Accused Products") in the State of Connecticut in violation of U.S. Patent Nos. 8,899,420 and 6,974,029 (Doc. 1). In light of a parallel ITC investigation and Defendant's filing of two ultimately unsuccessful petitions for *inter partes* review before the Patent Trial and Appeal Board challenging the validity of one of the patents, this case was stayed until May 1, 2017 (Doc. 35).

REDACTED - PUBLIC VERSION

On May 22, 2017, the Supreme Court issued a decision in the *TC Heartland* case, clarifying the state of the law regarding one of the two bases for venue found in the venue statute for patent infringement actions (28 U.S.C. § 1400(b)). *TC Heartland*, 137 S. Ct. 1514.  On the same day, Munchkin filed a declaratory judgment action in the Central District of California relating to the same claims in this case to begin executing its forum shopping strategy to ground this case in the Central District of California.  In fact, only after the California declaratory judgment case was docketed, and three days later, did Munchkin move the Court to schedule and conduct a Pre-Filing Conference in advance of the instant Motion to Transfer Venue to the Central District of California to raise its venue challenge under *TC Heartland* (Doc. 43).

### III.   FACTUAL BACKGROUND

#### *PLAINTIFFS' PRESENCE IN THE UNITED STATES*

*Plaintiff Edgewell and its Infant Care division*.  Edgewell is not only an established, successful Connecticut company, but it is also the leading manufacturer and marketer of Diaper Genie Systems, as well as other well-recognized brands such as Playtex® infant care products, Playtex® feminine care products, Wet Ones® premoistened wipes, and skincare and suncare products such as Banana Boat® and Hawaiian Tropic®.  All of these products are sold in Connecticut and elsewhere.  ███████████████████████

███████████████████████████████████

██████████████████████████████████████

███████████████████

REDACTED - PUBLIC VERSION

***Edgewell's business in Connecticut***.  Edgewell has a long-standing history in the State of Connecticut. ██████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████  Over the years, Edgewell has maintained offices and facilities in various locations in State of Connecticut, including Bridgeport, Milford, Shelton, Stamford, and Westport (*id*.).

Today, Edgewell maintains two facilities in Connecticut, one in Shelton and one in Milford (*id*. at ¶ 5), ██████████████████████████████  The Shelton facility is ██████████████████████████████, and is home to Edgewell employees responsible for ██████████████████████████████ ██████████████████████████████████ Included among those employees are ████████████ who work in Edgewell's Infant Care division, including the Diaper Genie System (*id*. at ¶ 8).  Edgewell's Milford facility also has a corporate office and includes employees ████████████ ████████████████████████████ focusing on engineering, operations, quality, finance, regulatory, procurement, and supply management functions (*id*. at ¶ 7).

As a result of Edgewell's extensive business presence in Connecticut, ████ ██████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████

REDACTED - PUBLIC VERSION

████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

**Similarly,** ███████████████████████████████████████

██████████████████████████████████████████

████████████████ **For example, Karen Lesh,** █████████████████████████████████

█████████████████████████████████████████████

████████████████ **lives and works in Connecticut, as does Patrick Kane, her**

**predecessor (***id***. at ¶¶ 4, 15).**

***Edgewell's business in Delaware***.  **Edgewell also has a significant presence in the**

**State of Delaware, where it maintains several facilities** ██████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

███████████ **As a result of Edgewell's presence and work in Delaware,** ████████████

██████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████

***Edgewell's presence outside of Connecticut and Delaware***.  **In addition to its**

**facilities in Connecticut and Delaware, Edgewell has several other facilities**

REDACTED - PUBLIC VERSION

located throughout the region that contribute to Edgewell's Diaper Genie System business (*see id.* at ¶ 13).  For example, Edgewell maintains an office in Allendale, New Jersey, █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████   Edgewell also has a facility in Sidney, Ohio, ████████████████████████

████████████████████████████████████████████████████████

     In contrast to its strong presence in Connecticut, Delaware, New Jersey, and other locations in the eastern United States, ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████

*Edgewell's use of third-parties*.  ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

REDACTED - PUBLIC VERSION

███████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

***Plaintiff IRC***.  IRC is a company organized under the laws of Barbados, and has its principal place of business in Christ Church, Barbados, where it has been located since its founding in 2004 (Declaration of Julie LeBlanc ("LeBlanc Dec.") at ¶ 4).  IRC's sole business is the sales and marketing of diaper pails and refill cassettes.

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

REDACTED - PUBLIC VERSION

***The inventors of the patents-in-suit***.  Michael Morand and Claude Maufette, named inventors of the patents at issue in this suit, live in Montreal, Canada (Doc. 1-1, 1-6; LeBlanc Dec. at ¶¶ 15-16).

### ***MUNCHKIN'S PRESENCE IN CONNECTICUT***

***Munchkin operates a large U.S. business.***  Munchkin is an international company with offices throughout the world, including

REDACTED - PUBLIC VERSION

████████████████████████████ **Munchkin's annual revenues are**

**approximately** ███████████████████

***Munchkin sells products through its retail partners in Connecticut.*** **Munchkin**

**sells products, including the products accused of infringing Plaintiffs' patents in**

**this case, through the stores of its retail partners located in the State of**

**Connecticut, including Target, Walmart, Babies R Us, and others (*see, e.g., id*. at**

**28:13-25, 33:2-11, 34:14-24, 36:17-21, 37:4-7).**

**Munchkin's retail partners are located throughout the United States,**

██████████████████████████████████████ **These**

**retailers stock up to** ██████ **different Munchkin products on the shelves of**

**their Connecticut stores (*id*. at 28:19-21, 33:8-11, 34:2-4, 34:14-24, 36:17-21).**

**As Munchkin's 30(b)(6) corporate witness admitted, Munchkin** ████████

████████████████████████████████████████

████████████████████████████████████████

██████████ **Munchkin has received both Target's Partner Award of**

**Excellence and Babies 'R' Us's Vendor of the Year award multiple times (*id*. at**

**31:23-32:10, Ex. 2 (Retail Merchandiser Article)).** ███████████████

████████████████████████████████████████

████████████████████ **Moreover, Munchkin sales**

**representatives** ██████████████████████████

████████████████████████████████████████

██████████████████████████████

REDACTED - PUBLIC VERSION

***Munchkin sells products directly into Connecticut through its retail website.*** In addition to sales through its retail partners, Munchkin also sells the Accused Products directly to consumers in the State of Connecticut through its active retail website (*id*. at 42:18-20, 43:4-12, 44:7-11; Doc. 53-4 (Keimach Dec.) at ¶ 20; Ex. 3).[2] Orders placed by Connecticut consumers on Munchkin's website are processed by Munchkin and shipped directly from Munchkin to residents of the State of Connecticut (Ex. 1 (Keimach Tr.) at 43:4-12; Doc. 53-4 (Keimach Dec.) at ¶ 20).

From January 1, 2014 to June 1, 2017, Munchkin claims to have ██████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████

***Munchkin engages individuals in sales and marketing of its products in Connecticut.*** In addition to the sales of its products directly into Connecticut, Munchkin also ████████████████████████████████████████████████ ████████████████████████████████████████████████████

For example, Munchkin employs sales representatives █████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

Although Munchkin's 30(b)(6) deponent would not confirm ████████████ ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ █████████████████

REDACTED - PUBLIC VERSION

████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

██████ Mr. Keimach testified that he could not answer if Munchkin's sales

representatives have ████████████████████████████████████████

██████████████████ .

In addition to having sales representatives ████████████████████

Munchkin also engages at least one sales and marketing consultant, Lauren

McBride, who resides in the State of Connecticut (Ex. 5 at 2).  Ms. McBride is a so-

called "influencer," and apparently part of Munchkin's national influencer

program (*id.* at 8, 32; Ex. 6; Ex. 12).  As described by Munchkin's 30(b)(6) witness,

an influencer is ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

Through Munchkin's national influencer program, Munchkin engages with

influencers, also referred to as brand ambassadors, to perform a broad range of

engagement, including "sponsored content, … Instagram takeovers, [and]

sponsorships of their events" (Ex. 6 at 2; Ex. 12).  Ms. McBride has worked on

behalf of Munchkin in the State of Connecticut as a brand ambassador to

REDACTED - PUBLIC VERSION

advertise and review Munchkin's products (Ex. 5 at 8, 32).  In fact, she has written at least two such product reviews within just the last year (*id.*).

Surprisingly, although Munchkin's 30(b)(6) witness testified ███████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████ Yet, when confronted with evidence of Munchkin's sponsorship of Ms. McBride's influencer activities and her marketing efforts on behalf of Munchkin in the State of Connecticut, Munchkin's witness ultimately admitted ██████████████████████████████ ██████████████████████████████████████████████████ ███████

***Munchkin engages third parties in a variety of additional activities*.**  Munchkin also engages ████████████████████████████████ ██████████████████████████████████████████ Munchkin's 30(b)(6) deponent testified that he did not know █████████████ ████████████████████████████████████████████ Moreover, Mr. Keimach testified that he did not know ███████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████

***Munchkin*** ████████████████████████████████████

Munchkin also █████████████████████████████████████

13

REDACTED - PUBLIC VERSION

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████ **When questioned, Mr. Keimach did not know** ██████████████

████████████████████████████████████████████████

████████████████

***Munchkin repeatedly refused to provide court-ordered testimony about
Munchkin's presence in Connecticut.*** **Per the Court's direction during the May 31,
2017 pre-filing conference (*see* Doc. 51), Plaintiffs noticed a deposition on a
number of topics related to Defendant's transfer motion.  Munchkin designated
Andy Keimach to provide the requested testimony, subject to certain objections
(Ex. 7).  As detailed above, Mr. Keimach made several admissions during his
deposition that were inconsistent with the representations he made to the Court
in his declaration.  Moreover, Mr. Keimach was unprepared and unable to provide
information responsive to several of the noticed topics, including Munchkin's
presence in Connecticut.  For example, as discussed above, Mr. Keimach did not
know** ████████████████████████████████████████████████
███████████████████████████████████████ **Mr. Keimach was also unprepared
to testify regarding the sales of Munchkin products within the State of
Connecticut (*compare* ** ███████████████████████████████
████████████████████████████████████████████████

*with* **Ex. 8 at Topics 6, 7).  As yet another example, Mr. Keimach was unable to**

14

REDACTED - PUBLIC VERSION

**provide** ██████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████

**Following the deposition, counsel for Edgewell repeatedly requested a knowledgeable deponent on these topics and others, noting Mr. Keimach's failure to provide the Court-ordered testimony (Ex. 9).  Munchkin repeatedly refused to provide the requested information, but nevertheless submitted two additional self-serving declarations purporting to provide "answers" to Edgewell's requests for information.  Edgewell responded that the declarations were improper but nevertheless asked when the two declarants would be available for deposition (Ex. 10).  Munchkin refused to make the two new witnesses available for deposition (*id.*).**

IV.   **ARGUMENT**

A.   **Venue is Proper in Connecticut and Munchkin's Motion Should be Denied.**

**Venue in a patent case is governed by a two-pronged test set forth in 28 U.S.C. § 1400(b), which provides:**

> **Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.**

**28 U.S.C. § 1400(b).  Venue is proper if either prong applies.  Namely, venue is proper (1) if the defendant "resides" in the venue where the case is brought; or**

15

(2) where the defendant has committed acts of infringement and has a regular and established place of business (*id.*).

In deciding a motion challenging the propriety of venue, the "court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits." *McQuennie v. Carpenters Local Union 429*, No. 3:15-cv-00432, 2015 WL 6872444, at *1 (D. Conn. Nov. 9, 2015) (quoting *Quinn v. Fishkin*, 117 F. Supp. 3d 134, 138 (D. Conn. Aug. 4, 2015).  When such an allegation is challenged, the court "may examine facts outside the complaint to determine whether venue is proper."  *Id.*  Further, the court must "draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff."  *Quinn*, 117 F. Supp. 3d at 138 (quoting *Indymac Mortg. Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. Aug. 10, 2001)) (finding venue proper after drawing all reasonable inferences and resolving all factual conflicts in the favor of the plaintiff); *see also McQuennie*, 2015 WL 6872444, at *3 (same).

In this case, based on the uncontradicted facts in Plaintiffs' Amended Complaint, as well as the additional evidence adduced by Plaintiffs during venue discovery, it is clear that venue is proper in the District of Connecticut.

## 1. *TC Heartland* is Inapplicable to the Second Prong of 28 U.S.C. § 1400(b).

Munchkin's Motion to Transfer Venue in this case relies almost exclusively on the Supreme Court's decision in *TC Heartland* to argue that the Supreme Court changed the law under 28 U.S.C. § 1400(b), effectively destroying venue in this case.  Munchkin is incorrect.

REDACTED - PUBLIC VERSION

In *TC Heartland*, The Supreme Court did examine the patent venue statue, but examined only the first prong of the statute, i.e., the inquiry of where the defendant "resides" *See generally TC Heartland*, 137 S. Ct. 1514.  Specifically, the Court held that "[a]s applied to domestic corporations, 'reside[nce]' in § 1400(b) refers only to the State of incorporation."  *Id.* at 1515.  Importantly, the Court's holding in *TC Heartland* had no impact on venue with respect to the second prong, i.e., "where the defendant has committed acts of infringement and has a regular and established place of business."  There is no dispute that Munchkin is not incorporated in the State of Connecticut, and thus does not "reside" in Connecticut for the purpose of § 1400(b).  Venue in this case is proper in Connecticut, however, under the second prong of § 1400(b).  The undisputed allegations in the Complaint, when viewed in Plaintiffs' favor, as well as the additional facts adduced during venue discovery leave no dispute that Munchkin "has committed acts of infringement and has a regular and established place of business" in Connecticut.  Thus, venue in this case is proper in the District of Connecticut.

> ## 2.  Munchkin Has Committed Acts of Infringement Within the District for Purposes of Venue.

With respect to the "committed acts of infringement" inquiry, courts have "'consistently held that an allegation of infringement is itself sufficient to establish venue and [the] plaintiff is not required to demonstrate actual infringement by [the] defendant[ ].'"  *Raytheon Co. v. Cray, Inc.*, No. 2:15-cv-01554, 2017 WL 2813896, at *4 (E.D. Tex. June 29, 2017) (quoting *Funnelcap, Inc. v. Orion Indus., Inc.*, 392 F. Supp. 938, 943 (D. Del. 1975)).

REDACTED - PUBLIC VERSION

Under the relevant statute, 35 U.S.C. § 271, an "act of infringement" includes making, using, offering to sell, or selling a patented invention, or inducing such conduct. "Thus, an allegation that a defendant has committed one of those acts in the district is sufficient to satisfy this requirement . . . ." *Raytheon,* 2017 WL 2813896, at *4; *see also In re Cordis Corp.,* 769 F.2d 733, 737 (Fed. Cir. 1985) ("the issue of infringement is not reached on the merits in considering venue requirements."). And, as Munchkin recognizes, Edgewell and IRC have alleged acts of infringement by Munchkin in Connecticut (Doc. 53-1 at 3 n.1; Doc. 36 at ¶¶ 19-37). Thus, Munchkin has committed acts of infringement within the State of Connecticut for purposes of Section 1400(b).

Munchkin's argument that Plaintiffs are required, at this early stage, to affirmatively prove acts of infringement within Connecticut is without merit. Requiring a plaintiff to affirmatively prove patent infringement at the outset of litigation would be nonsensical, and has been soundly rejected by courts for purposes of establishing venue. *See, e.g.*, *Raytheon*, 2017 WL 2813896, at *4; *see also Cordis*, 769 F.2d at 737; *Funnelcap, Inc.*, 392 F. Supp. at 943.

Tellingly, the only authority Munchkin cites in support of its untenable position is *Stuebing*, an unreported slip opinion from the Southern District of Ohio. *Stuebing* itself relies only on a single case from the same district, not involving venue in a patent case under 28 U.S.C. § 1400(b), but the unrelated issue of venue under the general venue statute, 28 U.S.C. § 1391, in the context of a breach of contract case (Doc. 53-1 at 3 n.1 (citing *Stuebing Automatic Mach. Co. v. Gavronsky*, No. 1:16-cv-576, slip op. at 6 (S.D. Ohio June 12, 2017) (citing

18

REDACTED - PUBLIC VERSION

*Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d. 1046 (S.D. Ohio Mar. 18, 2002)).  *Steubing* is further distinguishable because the defendant in *Steubing* contended that it did not sell or offer for sale the accused product within the forum (Doc. 53-2 at 6).  There is no such contention by Munchkin in this case.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████  Thus, there can be no dispute that this case satisfies the "committed acts of infringement" inquiry for purposes of venue under 28 U.S.C. § 1400(b).

> **3. Munchkin Has a Regular and Established Place of Business in Connecticut.**
>
> > **a. Determining the Existence of a "Regular and Established Place of Business."**

Prior to *TC Heartland*, parties in patent cases rarely litigated venue under the second prong of Section 1400(b), which requires "a regular and established place of business."  *See Raytheon*, 2017 WL 2813896, at *10 (recognizing "uncertainty among the litigants regarding the scope of the phrase 'regular and established place of business'").  Since *TC Heartland*, however, many courts have looked to the Federal Circuit's 1985 decision, *Cordis*, 769 F.2d at 737, for guidance on interpreting the phrase "regular and established place of business" for purposes of venue under Section 1400(b).

> > **i. *Cordis* Does Not Require a "Fixed Physical Presence."**

The Federal Circuit made clear in *Cordis* that the test to determine whether a defendant has a "regular and established place of business" is "whether the

REDACTED - PUBLIC VERSION

corporate defendant does its business in that district through a permanent and continuous presence there and not . . . whether it has a fixed physical presence in the sense of a formal office or store." *Id.* Using this test, the Federal Circuit held in *Cordis* that the presence of sales representatives located in the forum state, working out of their home offices on behalf of the defendant and maintaining an inventory of defendant's products, along with a third party secretarial service, was sufficient to establish a regular and established placed of business under Section 1400(b). *Id.* at 735-736. The Federal Circuit made this finding even though the defendant did not have a "fixed physical location" within the forum state. *Id.*

### ii. District Court Applications of *Cordis* Are Instructive.

Relying on *Cordis*, district courts throughout the country have provided guidance on how to determine whether a defendant has a "regular and established place of business" within the meaning of Section 1400(b). These cases recognize that although this highly-factual inquiry can be a difficult and "vexatious" one for courts, "the tendency of the courts has been to prevent a corporation from interposing its corporate citizenship when its actions elsewhere are detrimental to others" and to require defendants to "assume certain responsibilities in exchange for the privilege of obtaining a lucrative portion of its business from other areas." *Shelter-Lite, Inc. v. Reeves Bros., Inc.*, 356 F. Supp. 189, 194-96, 177 U.S.P.Q. 683 (N.D. Ohio 1973).

Further, "[c]ourts have not looked to the size of a defendant's business, or to how the size of a defendant's business within a district compares with its sales

REDACTED - PUBLIC VERSION

nationwide." *San Shoe Trading Corp. v. Converse Inc.*, 649 F. Supp. 341, 345 (S.D.N.Y. 1986). Rather, the "[e]mphasis must be on the existence of the regular and established place of business—not on the nature or character of the business conducted there." *Id.*

For example, in perhaps the most recent case following the principles set forth in *Cordis*, the United States District Court for the Eastern District of Texas undertook a survey of cases applying the 1985 *Cordis* decision, and set forth a framework for applying the *Cordis* principles in the context of the modern business era. *Raytheon*, 2017 WL 2813896, at \*10-\*14.

The *Raytheon* court first recognized litigants' and courts' frustration and confusion regarding venue-related issues. *Id.* The court explained that "[f]or the benefit of such litigants and their counsel, the Court [] conducted a thorough analysis of the existing case law regarding regular and established place of business." *Id.* at \*10.

Based on *Cordis* and its progeny, and in light of how "[t]echnology has revolutionized the way businesses operate and the way consumers interact with those business," the court in *Raytheon* put-forth a well-reasoned, four-factor framework to assist in a court's determination of whether a defendant has a regular and established place of business for purposes of Section 1400(b). *Raytheon*, 2017 WL 2813896, at \*11. The factors consider the extent to which a defendant (i) "has a physical presence in the district, including but not limited to property, inventory, infrastructure, or people," (ii) "represents . . . that it has a presence in the district," (iii) "derives benefits from its presence in the district,

REDACTED - PUBLIC VERSION

including but not limited to sales revenue," and (iv) "interacts in a targeted way with existing or potential customers, consumers, users, or entities within a district, including but not limited to through localized customer support, ongoing contractual relationships, or targeted marketing efforts." *Id*. at *11-14 (citing *Cordis*).

Whether this Court applies directly the principles and reasoning set forth by the Federal Circuit in *Cordis*, or uses a modern application of the *Cordis* principles that reflects the realities of today's modern business, there is no question that Munchkin has a regular and established place of business in Connecticut by virtue of its presence and activities in this state including an active direct-to-consumer retail website shipping products to Connecticut residents, retail partners with brick-and-mortar stores in Connecticut, █████ ████████████████████████ and a Munchkin brand ambassador residing in Connecticut who directly markets Munchkin's products to residents of Connecticut.

  **b.** <u>**Munchkin Has an Established Place of Business in Connecticut.**</u>

   **i.** **Munchkin has a Regular and Established Place of Business by Virtue of its Retail Partners and Active Website.**

Through its █████████████████████ with key retail partners, Munchkin has a presence in numerous stores located throughout the State of Connecticut, in which Munchkin products are advertised and sold (Ex. 1 (Keimach Tr.) at 31:23-32:10; Doc. 53-4 (Keimach Dec.) at ¶ 20). These retail partners in fact maintain inventory █████████████████████

REDACTED - PUBLIC VERSION

██████████ any given retail location (Ex. 1 (Keimach Tr.) at 36:17-21).  As recognized by the Federal Circuit in *Cordis*, the sale of goods and presence of entities that "continually maintain stock" supports a finding of a regular and established place of business.  *Cordis*, 769 F.2d at 735-37; *see also Sherman Paper Prod. Corp. v. Sorg Paper Co.,* 161 F. Supp. 44, 45 (E.D. Mich. 1958) (considering the presence of inventory of defendant in determining propriety of venue); *Raytheon*, 2017 WL 2813896, at *12 (same).

███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████  *See Sherman Paper Prod. Corp. v. Sorg Paper Co.*, 161 F. Supp. 44, 45 (E.D. Mich. 1958) (solicitation of sales through third party agent in the state weighed in favor of proper venue); *Latini v. R. M. Dubin Corp.*, 90 F. Supp. 212, 214 (N.D. Ill. 1950) ("a foreign corporation may have a regular and established place of business, although the business therein is merely securing orders and forwarding them to the home office of the non-resident corporation"); *Raytheon*, 2017 WL 2813896, at *11-*13.  Munchkin's physical presence in the state, through its retail partners and its direct-to-consumer active website, establishes that Munchkin has a regular and established place of business in Connecticut.  *Cordis,* 769 F.2d at 735-37;

REDACTED - PUBLIC VERSION

*Latini*, 90 F. Supp. at 214; *Raytheon*, 2017 WL 2813896, at *11-*13.  Moreover, literature distributed by Munchkin with the products it sells through retail partners located in Connecticut direct consumers to visit Munchkin.com to purchase additional Munchkin products, or to contact Munchkin's helpline for additional assistance (Ex. 11 at 8).  Thus, Munchkin also has a presence in Connecticut by virtue of its active website and customer call center.  Such direct solicitation and explicit representations to consumers that it is present in the District of Connecticut counsels in favor of finding that venue is proper over Munchkin in this district.  *Cordis*, 769 F.2d at 735-37; *Raytheon*, 2017 WL 2813896, at *13.

Furthermore, through its retail partners and solicitation of orders from Connecticut consumers through its active retail website, Munchkin derives significant benefits from the State of Connecticut, most notably in the form of revenues from the sales of its products in Connecticut (Ex. 1 (Keimach Tr.) at 42:18-43:12, 50:7-52:15; Doc. 53-4 (Keimach Dec.) at ¶ 20; Ex. 4 (Shelofsky Dec.) at ¶¶ 2-3).  Munchkin has sold at least ███████████████████ ███████████████████████████████████  Such revenues from the State of Connecticut are further supportive of a finding that venue is proper in this district.  *Instrumentation Specialties Co. v. Waters Assocs., Inc.,* No. 76-C-4340, 1977 WL 22810, at *5 (N.D. Ill. Oct. 12, 1977) (considering the defendant's sales in the state when determining propriety of venue); *see also Raytheon*, 2017 WL 2813896, at *12.

REDACTED - PUBLIC VERSION

Munchkin's attempts to discount and minimize its presence in Connecticut by arguing that revenues from the State of Connecticut account for only a small percentage of its total revenues misses the point.  Such attempts by defendants to minimize their contacts for purposes of venue have been soundly rejected by other courts.  *See San Shoe Trading*, 649 F. Supp. at 345 (size of a defendant's business within a district or how it compares with sales nationwide is not relevant).

> ### c. The Court Should Make an Adverse Inference that Munchkin Has a Regular and Established Place of Business in Connecticut.

Even if the Court finds that the facts above are insufficient to show that Munchkin has a regular and established place of business in Connecticut, the Court should nevertheless make an adverse inference that Munchkin does, in fact, have a regular and established place of business in the State of Connecticut for its failure to produce a knowledgeable witness about the true extent of Munchkin's contacts with Connecticut.

As explained in the sections above, Munchkin's corporate representative, Mr. Keimach, repeatedly provided testimony that was inconsistent with the sworn statement he provided to the Court just weeks ago in support of Munchkin's Motion to Transfer Venue.  When pressed on the details of his sworn declaration and testimony, including the true extent of Munchkin's contacts with Connecticut, Munchkin's designee was unable to answer questions, essentially refusing to provide testimony, regarding Munchkin's presence in Connecticut.

By way of example, when Mr. Keimach was asked if he knew ███████

██████████████████████████████████████████████████████████

REDACTED - PUBLIC VERSION

███████████████████████████████████████████████████████████████[3]

Mr. Keimach was also unprepared to testify regarding the sales of Munchkin products and activities of Munchkin employees within Connecticut (*id*. at 15:10-13, 45:24-49:12; Ex. 9).[4]

Due to Mr. Keimach's inability to answer straight-forward questions regarding the extent of Munchkin's business and contacts in Connecticut, counsel for Plaintiffs promptly requested that Munchkin prepare and make another witness available for deposition so that Plaintiffs could properly respond to Munchkin's Motion to Transfer Venue.  After multiple requests by Plaintiffs and repeated refusals by Munchkin to provide a prepared witness, Munchkin instead served on Plaintiffs two additional self-serving, conclusory declarations from Munchkin witnesses Marc Hayes and ████████████ to forestall Plaintiffs' attempts to discover the true extent to which Munchkin is doing business in Connecticut.[5]  Even after serving these self-serving supplemental declarations, however, Munchkin continued to refuse to make a competent witness available

---

[3] This testimony is directly responsive to at least Topic 3 of the 30(b)(6) topics served on Munchkin by Plaintiffs in connection with Munchkin's Motion to Transfer (Topic 3:  "the identity, business address, and state of residency of any Munchkin employee or independent contractor responsible for any sales, marketing, quality assurance, distribution, or any other responsibilities within the State of Connecticut"), as well as Topic 8.

[4] This testimony is directly responsive to at least Topic 6 ("[t]he sales of Munchkin products, by volume and dollar value, with the State of Connecticut") and Topic 7 ("Munchkin's sales of Accused products through its website, including to consumers within the State of Connecticut") of the 30(b)(6) topics served on Munchkin by Plaintiffs, as well as Topic 8.

[5] Neither declaration answered the very basic question posed to Mr. Keimach: Is there "anyone who does business in the State of Connecticut on behalf of Munchkin?" (Ex. 1 (Keimach Tr.) at 55:14-17; Ex. 4; Ex. 26 (Hayes Dec.)).

REDACTED - PUBLIC VERSION

for deposition on the noticed topics, preferring instead to hide behind carefully worded declarations from witnesses that it refuses to submit to cross-examination.

Munchkin should not be allowed to proffer incomplete and inconsistent self-serving testimony denying any presence within Connecticut, while at the same time disobeying this Court's order to provide discovery regarding Munchkin's presence in this district in connection with Munchkin's Motion to Transfer Venue.  Rather, the Court should preclude Munchkin from relying on the testimony of its declarants and draw an adverse inference that any material responsive to the relevant topics and improperly withheld by Munchkin would reflect adversely on Munchkin, conclusively establishing that Munchkin has a regular and established place of business in Connecticut.

Pursuant to Fed. R. Civ. P. 37(b)(2)(A), if a party fails to obey a discovery order, the court may issue further orders, including (i) directing that the designated facts be taken as established for purposes of the action, as the prevailing party claims, and (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence.  *See, e.g., In re Air Crash near Nantucket Island, Mass., on Oct. 31, 1999*, No. 00-MDL-1344, 2004 WL 1824385, at *3 (E.D.N.Y. Aug. 16, 2004) (drawing inference pursuant to Fed. R. Civ. P. 37 that, had an expert witness obeyed the discovery order, the material disclosed would have reflected adversely).  Such sanctions may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also

REDACTED - PUBLIC VERSION

through ordinary negligence.  *Valentini v. Citicorp. Fin. Servs., Corp.*, 589 Fed.

App'x 1, 2 n. 3 (2d Cir. 2014) (quoting *Residential Funding Corp. v. DeGeorge Fin.

Corp.*, 306 F.3d 99, 113 (2d. Cir. 2002); *see also Bouzo v. Citibank, N.A.*, 96 F.3d

51, 60 (2d Cir. 1996) (finding that district court "acted well within its discretion in

concluding that an appropriate adverse inference might be drawn" against a party

who disobeyed a discovery order).  In light of Munchkin's blatant disregard for

highly relevant Court-ordered discovery, this Court should draw an adverse

inference that Munchkin has a regular and established business in Connecticut.

### B.    If the Court Finds Venue to be Improper in Connecticut, Delaware is a More Appropriate Forum than California.

Should this Court find that venue is improper in Connecticut, this action

should be transferred to the District of Delaware, not the Central District of

California.  Edgewell and Munchkin are both incorporated in Delaware, the

convenience factors weigh heavily in favor of Delaware, Delaware is Plaintiffs'

choice of forum should the Court find that venue is improper in Connecticut, and

Delaware is more convenient to the majority of party and non-party witnesses, as

well as other sources of proof.

While Munchkin supports its request to transfer this case to the Central

District of California by arguing that "all of the witnesses, documents, and

operative facts most pertinent" to this lawsuit are located in California (*see, e.g.,*

Doc. 53-1 at 16), such statements are untrue and nothing more than erroneous

overgeneralizations unsupported by the facts.  When balanced with the

inconsistent testimony of Munchkin's corporate representative, and a complete

view of the relevant facts, it is clear that Munchkin has failed to make the "'strong

showing'" required to upset plaintiff's choice of forum.  *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 537 (S.D.N.Y. June 26, 2014) ("In order to overcome the plaintiff's choice of forum, the movant must make "a strong showing that the balance of convenience and the interest of justice weight heavily in favor of a transfer.").

### 1.  Venue is Proper in Delaware

There is no dispute that venue is proper in the District of Delaware.  Even Munchkin concedes that "the District of Delaware is a district in which this case could have been brought in light of Munchkin's incorporation in Delaware" (Doc. 53-1 at 18).  Specifically, venue is proper under 28 U.S.C. § 1400(b), as Munchkin is deemed to "reside" in Delaware.  *TC Heartland,* 137 S. Ct. at 1517.  Munchkin is also subject to personal jurisdiction in the State of Delaware since Munchkin is incorporated there.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).

### 2.  The Interests of Justice Favor Transfer to Delaware

Under 28 U.S.C. § 1406, the Court may transfer a case filed in a district where venue is improper if it is in the interest of justice.  A determination of whether the interests of justice are served under 28 U.S.C. § 1406 requires consideration of several factors, which are the same as the factors under 28 U.S.C. § 1404.  *Am. Homecare Fed'n, Inc. v. Paragon Scientific Corp.*, 27 F. Supp. 2d 109, 115 n.2 (D. Conn. Oct. 26, 1998).

As shown below, when applied to the facts of this case, each of the factors either favor transfer to the District of Delaware or are neutral.  Accordingly, if the Court finds that venue is improper in Connecticut, the District of Delaware is the

REDACTED - PUBLIC VERSION

most convenient transferee forum, and such transfer should be granted in the interests of justice.

### a.  Plaintiffs' choice of forum favors transfer to Delaware

It is well established that "Court[s] must give deference to a strong presumption in favor of a plaintiff's choice of forum, which presumption may be overcome only by clear and convincing evidence that private and public interest factors favor trial in the alternative forum."  *Adams v. Time Warner*, 83 F. Supp. 2d 296, 298 (D. Conn. 1999) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). In the event that the Court finds venue improper in Connecticut, it is Edgewell's and IRC's preference that this case be transferred to Delaware, not the Central District of California.  Indeed, the District of Delaware has a strong connection to this suit.  Both parties are incorporated in Delaware, ███████████████

████████████████████████████████████████

█████████████

Moreover, Munchkin's contention that Edgewell's choice of forum is entitled to no weight is misplaced.  Of course, it is axiomatic that if the Court finds venue to be improper in Connecticut as Munchkin argues, Edgewell's and IRC's decision to file suit there need not be given deference, as the suit cannot be maintained in Connecticut.  28 U.S.C. § 1406.  But where, as here, Edgewell has identified a second preferred forum only in the event that the Court finds its original choice to be improper, Edgewell's and IRC's choice should be given deference.  *See, e.g., Earley v. BJ's Wholesale Club, Inc.*, 2007 WL 1624757, at *2 (S.D.N.Y. June 4, 2007) (giving weight to Plaintiff's second choice of forum, even though Plaintiff's counsel admitted that the originally chosen forum was "not the

30

REDACTED - PUBLIC VERSION

most appropriate."); *Glaxo Grp. Ltd. v. Genentech, Inc.*, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010) (giving some deference to plaintiff's alternative forum).

Accordingly, Edgewell's and IRC's alternative choice of forum is entitled to at least some deference, and this factor weighs in favor of transfer to the District of Delaware over the Central District of California.

### b. <u>Convenience of witnesses favors transfer to Delaware</u>

If the Court finds that Connecticut is not a proper venue for the case, the convenience of the witnesses favors transfer to Delaware, not California. ███

████████████████████████████████████████████████

████████████████████████████████████████████████

████ While Munchkin contends that cases such as *WorldCare* suggest that transfer to California is appropriate, Munchkin also acknowledged that the *WorldCare* court only transferred the cases to that district where "all known witnesses resided" (Doc. 53-1 at 13).  Analogous facts simply do not exist in this case. ██████████████████████████████████████

████████████████████████

### i.   Edgewell Witnesses

The District of Delaware is clearly a more convenient forum for Edgewell and its employees (Lesh Dec. at ¶¶ 25-26). ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

31

REDACTED - PUBLIC VERSION

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████

      **Given their location along the east coast (predominately in Connecticut and Delaware), the District of Delaware is clearly the more convenient forum for Edgewell's witnesses (*id*. at ¶¶ 25-26).** ████████████████████████████████

32

REDACTED - PUBLIC VERSION

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████ **By comparison, for Edgewell witnesses to appear in the Central District of California would require an expensive cross country flight, which involves (at best) nearly six hours in the air, not to mention the substantial time associated with arrival to and departure from busy airports such as New York's JFK or Los Angeles's LAX (Ex. 16).**

### ii.     IRC Witnesses

**The District of Delaware is also significantly more convenient for witnesses from IRC, all of whom will be required to travel from Bridgetown, Barbados (LeBlanc Dec. at ¶¶ 18-19).  Delaware is significantly closer to Barbados than Los Angeles is, thus requiring significantly less travel time for IRC witnesses than the Central District of California.  Specifically, from Bridgetown, Barbados, it is 2,083 to Wilmington, Delaware (Ex. 17).  Because there are frequent, nonstop flights between Barbados and New York, however, IRC witnesses can arrive in Wilmington, Delaware on a five hour flight to New York, New York, and an additional car or train ride similar to that of Edgewell's witnesses in Connecticut. By contrast, it is nearly 4,000 miles from Bridgetown, Barbados to Los Angeles, California (Ex. 18).  Such a trek would require IRC employees to spend a minimum of 11 hours in transit in order to attend trial in California (Ex. 19).**

### iii.     Third-Party Witnesses

**The convenience of third-party witnesses also favors transfer to the District of Delaware, over the Central District of California.  Highly relevant witnesses–the**

REDACTED - PUBLIC VERSION

inventors of the patents-in-suit–live and work in Montreal, Canada (Doc.1-1, 1-6; LeBlanc Dec. at ¶¶ 15-16).  The inventors are thus significantly closer to the District of Delaware (411 miles) than they are Los Angeles (2468 miles) (Ex. 20; Ex. 21), and would be severely prejudiced by having to travel to the District of California for trial.



The District of Delaware is significantly more convenient for each of these entities than California.

### iv.   Munchkin Witnesses

Munchkin's contention that the location of "all" relevant Munchkin employees and non-party witnesses of whom Munchkin is aware favors transfer to the Central District of California is belied by the testimony of its own corporate representative, Mr. Keimach.

Munchkin contends that "all of the Munchkin witnesses with knowledge of the design, development, testing, marketing, and sale of the Accused Products reside and work in the Central District of California" (Doc. 53-1 at 13).  That statement, however, is plainly not true.  As Mr. Keimach explained during his deposition,

REDACTED - PUBLIC VERSION

Accordingly, the District of Delaware is the most convenient transferee forum for the majority of the party witnesses, even including certain Munchkin employees, as well as all of the non-party witnesses with unique information that is relevant to this case.  If this Court finds that Connecticut is not a proper venue for this case, this factor thus strongly favors transfer to Delaware, not California.

c.   Location of relevant documents is neutral

The location of relevant documents is neutral, as relevant documents are located in, or in close proximity to, both proposed transferee forums.  With regard

35

REDACTED - PUBLIC VERSION

to Delaware, for example, relevant documents in the possession of Edgewell, IRC, and key third parties are all maintained significantly closer to Delaware than California.



Finally, as established above, all known third-party witnesses in possession of unique materials that are not otherwise in possession of one of the parties are also closer in proximity to Delaware than California.  This includes, for example, any documents maintained by the inventors of the patents-in-suit, both of whom reside in Montreal, Canada.

### d.  Locus of operative facts favors Delaware

The operative facts in patent infringement cases are not limited to "those concerning the design, development, and production of the accused products" as Munchkin suggests (Doc. 53-1 at 14) (quotations and citations omitted).  As several courts in the Second Circuit have recognized, "[i]n patent cases, the locus of the operative facts generally lies either where the patented invention was developed, or where the allegedly infringing product was designed, developed, and produced."  *France Telecom S.A. v. Marvell Semiconductor, Inc.*, No. 12 Civ. 4986, 2012 WL 6808527, at *1 (S.D.N.Y. Dec. 28, 2012) (citing *Cirrex Sys. LLC v. InfraReDx, Inc.*, No. 10 Civ. 3952, 2010 WL 3431165, at *3 (S.D.N.Y. 2010))

REDACTED - PUBLIC VERSION

(emphasis added).  Thus, while the Accused Products may have been developed in California, the patented invention was developed in Montreal (Doc. No. 1-1, 1-6, LeBlanc Dec. at ¶¶ 15-16), which is more convenient to Delaware than California.

Moreover, as this Court recognized in *Ripmax*, a case on which Munchkin relies, "there is a preference to have a patent infringement case proceed in the forum where the infringement occurred."  *Ripmax Ltd. v. Horizon Hobby, Inc*., No. 3:07-cv-386, 2007 WL 2049033, at *4 (D. Conn. June 25, 2007) (citing *Lever Bros. Co. v. Procter & Gamble Co.*, 23 F. Supp. 2d 208, 211 (D. Conn. 1998)).  ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████  Thus, following *Ripmax*, the preferred forum would be Connecticut.

Accordingly, in this case there are three different centers of operative fact that are relevant to this factor.  While California is the location of the design of the accused products, the patented technology was developed in Montreal, and Munchkin has admitted to selling the accused products in Connecticut.  On balance, this factor slightly favors Delaware as it is substantially closer to Montreal and Connecticut than California.

### e.  Convenience of parties favors Delaware

The convenience of the parties clearly favors transfer to Delaware, as it is the most convenient forum for both Edgewell and IRC to litigate this case (Lesh Dec. at ¶¶ 25-26; LeBlanc Dec. at ¶¶ 17-19).  ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

REDACTED - PUBLIC VERSION

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████   Even though IRC is located in Barbados, it is still far more

convenient, efficient, and cost effective for IRC's witnesses to travel to the

District of Delaware for trial than to travel the nearly 4,000 miles to Los Angeles

for trial (LeBlanc Dec. at ¶¶ 14-19; Ex. 18).

As this Court recognized in *Ripmax*, "transfer should not merely 'shift the

burden of inconvenience from one party to the other.'"  *Ripmax*, 2007 WL

2049033, at *4 (quoting *Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F. Supp. 2d

130, 132 (D. Conn. 1998)).  Thus, Munchkin's convenience alone cannot justify

transfer of this case to California, especially when, as here the burden of litigating

away from a party's home and outside of its chosen forum would be shifted from

Munchkin to Edgewell and IRC.

### f.   Parties' relative means is neutral

The relative means of the parties is a neutral factor and "is entitled to little

weight where both parties are corporations."  *Ripmax*, 2007 WL 2049033, at *5

(citing *Int'l Secs. Exch. v. Chicago Bd. Options Exch. Inc.*, No. 6-cv-13445, 2007

WL 1541087, at *6 (S.D.N.Y. May 24, 2007)).  Moreover, Munchkin, as the "party

arguing for a transfer on the basis of the relative means of the parties" was

required to "offer documentation showing that granting or denying transfer would

be unduly burdensome."  *Id*.  Munchkin, however, has failed to come forward with

any evidence that even suggests it is unable to litigate in Connecticut or lacks the

resources to do so.

REDACTED - PUBLIC VERSION

While Munchkin represents to the Court that it is no more than a small, simple company that "can hardly be described as comparable in size and means" to Edgewell (Doc. 53-1 at 16), the reality is that Munchkin is a wealthy corporation with significant financial means, and certainly enough to litigate this case in Delaware.  For example, ███████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████ ███████████████████████  In fact, Munchkin's business is apparently so successful that, in place of what would otherwise be the "Investors" solicitation page on its website, Munchkin prominently features the chalk outlines of three bodies surrounded by crime scene tape, with the words "None needed….." (Ex. 22).

In addition to its significant financial resources, Munchkin is clearly capable of conducting operations far from its home in Los Angeles.  Indeed, Munchkin maintains facilities all over the globe, including Brampton, Ontario; Weatherby, England; Kwai Chung, Hong Kong; Jingan District, Shanghai; and Australia (Ex. 23).

Because Edgewell and Munchkin are both sophisticated corporate entities, the relative means of the parties is a neutral factor.

g.  Forum's familiarity with governing law is neutral.

As pointed out by Munchkin in its opening brief, the forum's familiarity with governing law is a neutral factor.  All district courts are presumed to be equally

REDACTED - PUBLIC VERSION

familiar with the federal law governing patent infringement cases (Doc. 53-1 at 16).  As such, Plaintiffs agree that this factor is neutral.

> h. **Trial efficiency and interests of justice weigh in favor of transfer to Delaware.**

According to Munchkin, the final factor, trial efficiency and the interests of justice, is "broad enough to cover the particular circumstances of each case, which in sum indicate that *the administration of justice will be advanced by transfer.*" *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 270 (D. Conn. 2012) (emphasis added).

Plaintiffs certainly agree that the administration of justice is of particular import in this case, but the equities here clearly favor transfer to Delaware over California.  Munchkin's duplicative suit in the Central District of California, the same district to which it now seeks transfer, is blatant forum-shopping.  As the Court correctly noted during the pre-filing conference regarding the present motion, Munchkin's duplicative suit is the junior case, and should be dismissed under the first-filed rule.  *See, e.g.*, *Speedfit LLC v. Woodway USA, Inc.*, 53 F.Supp.3d 561 (E.D.N.Y. 2014).  As such, transfer of this case to California serves only to reward Munchkin's flagrant attempt to circumvent the rules of procedure.

In addition, trial efficiency will not be increased by transfer of this case to California.  As explained above, Munchkin's contention that "all of the witnesses, documents, and operative facts" relevant to the claims in this case are located in California is false.  ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

REDACTED - PUBLIC VERSION

███████████████████████████████  As such, a trial in Delaware will best facilitate the presentation of proof at trial and will more fairly share the burden of travel across the parties and witnesses.

## V.   **CONCLUSION**

For the foregoing reasons and on the authorities cited herein, Plaintiffs respectfully request that the Court deny Defendant's motion to transfer because venue is proper in Connecticut in light of Munchkin's significant presence and activities within the State of Connecticut.  If, however, the Court is inclined to find that venue is not proper in Connecticut, Plaintiffs respectfully request that the Court transfer this case to Delaware, the more appropriate transferee forum.

Respectfully submitted, this 14th day of July, 2017.

*/s/ Keith E. Broyles*
**Marina Cunningham (CT 19475)**
**MCCORMICK, PAULDING, & HUBER LLP**
**185 Asylum Street City Place II,**
**18th Floor**
**Hartford, CT 06103**
**Tel: 860 549-5290**
**Fax: 860 527-0464**
**Email: cunningham@ip-lawyers.com**

**Keith E. Broyles (phv08033)**
**keith.broyles@alston.com**
**Wesley C. Achey (phv07993)**
**wes.achey@alston.com**
**Joshua M. Weeks (phv07994)**
**joshua.weeks@alston.com**
**ALSTON & BIRD LLP**
**1201 West Peachtree Street NW**
**Atlanta, GA 30309**
**Tel:  404-881-7000**
**Fax:  404-881-7777**

*Counsel for Plaintiffs*
*Edgewell Personal Care Brands, LLC*

REDACTED - PUBLIC VERSION

*and International Refills Company Ltd.*

REDACTED - PUBLIC VERSION

## CERTIFICATE OF SERVICE

I hereby certify that I have this date filed the foregoing document via the

Court's CM/ECF system, which will automatically give notice to all counsel of

record.

This 14th day of July, 2017.

/s/ Keith Broyles
Keith E. Broyles (phv08033)
keith.broyles@alston.com
ALSTON & BIRD LLP

**43**