Yuri Mikulka (Bar No. 185926)
yuri.mikulka@alston.com
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:    (213) 576-1000
Facsimile:    (213) 576-1100

*Attorneys for Plaintiffs*
*Edgewell Personal Care Brands, LLC,*
*International Refills Company, Ltd., and*
*Angelcare USA LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| EDGEWELL PERSONAL CARE BRANDS, LLC, INTERNATIONAL REFILLS COMPANY, LTD., and ANGELCARE USA LLC<br><br>          Plaintiffs,<br><br>     v.<br><br>MUNCHKIN, INC.,<br><br>          Defendant. | Case No. 2:18-CV-03005-PSG-JPR<br><br>Assigned to the Honorable Philip S. Gutierrez<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Notice of Motion and Motion; Declaration of Keith Broyles; Separate Statement of Uncontroverted Facts and Conclusions of Law; and (Proposed) Order] |
| MUNCHKIN, INC.,<br><br>          Counter-Plaintiff,<br><br>     v.<br><br>EDGEWELL PERSONAL CARE BRANDS, LLC and INTERNATIONAL REFILLS COMPANY, LTD.,<br><br>          Counter-Defendants. | Action Filed: January 21, 2016<br>Trial Date: September 22, 2022 |

James C. Grant (admitted *pro hac vice*)
 jim.grant@alston.com
Keith E. Broyles (admitted *pro hac vice*)
 keith.broyles@alston.com
Wesley C. Achey (admitted *pro hac vice*)
 wes.achey@alston.com
Pamela Holland Councill (admitted *pro hac vice*)
 pamela.councill@alston.com
Joshua M. Weeks (admitted *pro hac vice*)
 joshua.weeks@alston.com
Michael Deane (admitted *pro hac vice*)
 michael.deane@alston.com
Thomas Finch (admitted *pro hac vice*)
 thomas.finch@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:   (404) 881-7000
Facsimile:    (404) 881-7777

***Attorneys for Plaintiffs***
***Edgewell Personal Care Brands, LLC,***
***International Refills Company, Ltd., and***
***Angelcare USA LLC***

# **TABLE OF CONTENTS**

I.    ISSUE 1: CLEARANCE IS NOT INDEFINITE.................................................1

    A.    INDEFINITENESS LEGAL STANDARDS RELATED TO ISSUE 1 ...............................................................................................1

    B.    ARGUMENT RELATED TO ISSUE 1 ......................................2

        1.    The Federal Circuit's construction is the law of the case...............2

        2.    Intrinsic evidence shows that "clearance" is not indefinite............3

        3.    Munchkin repeatedly applied clearance without issue ...................5

        4.    Plaintiffs' infringement contentions do not create indefiniteness ...............................................................6

    C.    CONCLUSION OF ISSUE 1 .......................................................6

II.   ISSUE 2: INFRINGEMENT OF THE CLEARANCE LIMITATION ...............6

III.  ISSUE 3: NO INVALIDITY ...............................................................................8

IV.   ISSUE 4: THE MORAND DESIGN AND § 102(d) ...........................................8

    A.    STATEMENT OF FACTS RELATED TO ISSUE 4 ...............................9

        1.    The 420 Patent ...................................................................9

        2.    The Morand Design .............................................................9

        3.    The USPTO's prior 102(d) determination......................................9

    B.    LEGAL STANDARDS RELATED TO ISSUE 4.....................................9

    C.    ARGUMENT RELATED TO ISSUE 4 ......................................10

        1.    The Morand Design is not a "patent" under section 102(d)..........10

        2.    The Morand Design does not disclose the "same invention"........12

            a)    The Morand Design does not disclose "an elongated tube of flexible material".....................................12

            b)    The Morand Design does not disclose "annular opening for dispensing the elongated tube" .........................14

c)    The "same invention" must be disclosed in a single reference ........................................................... 15

3.    The Morand Design may not be used under § 103 because it is not prior art ................................................ 16

D.    CONCLUSION OF ISSUE 4 .................................................... 17

V.    ISSUE 5: THE 420 PATENT IS PRE-AIA ...................................... 18

A.    STATEMENT OF FACTS RELATED TO ISSUE 5 ........................... 18

1.    Prosecution of the 420 Patent ........................................... 18

2.    The examiner reviewed the 842 Application under *pre*-AIA law because there is no new matter ................................. 18

B.    LEGAL STANDARDs RELATED TO America Invents Act ............... 20

C.    ARGUMENT RELATED TO ISSUE 5 ........................................ 20

1.    The original 172 Application supports and describes the supposed new matter in Figure 2A ................................. 21

2.    The cassette of the 420 Patent would have been made using a process that necessarily results in an integrally formed structure ...................................................................... 23

3.    The patent examiner correctly did his job and applicant did not acquiesce to a new matter rejection. ........................ 24

D.    CONCLUSION OF ISSUE 5 .................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anascape, Ltd. v. Nintendo of Am. Inc.*,
   601 F.3d 1333 (Fed. Cir. 2010) ...............................................................20

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) ..............................................20

*BASF Corp. v. Johnson Matthey Inc.*,
   875 F.3d 1360 (Fed. Cir. 2017) ................................................................. 1

*In re Bass*,
   474 F.2d 1276 (CCPA 1973) ...................................................................10

*Becton, Dickinson & Co. v. Baxter Corp. Englewood*,
   998 F.3d 1337 (Fed. Cir. 2021) ...............................................................18

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
   783 F.3d 1374 (Fed. Cir. 2015) ................................................................. 3

*Bird-B-Gone, Inc. v. Bird Barrier Am., Inc.*,
   No. 12-cv-178, 2013 U.S. Dist. LEXIS 191316 (C.D. Cal. Mar. 20,
   2013) .........................................................................................................17

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
   977 F.2d 1555 (Fed. Cir. 1992) .........................................................21, 24

*in re Carlson*,
   983 F.2d 1032 (Fed. Cir. 1992) ...............................................................12

*Colucci v. Callaway Golf Co.*,
   750 F. Supp. 2d 767 (E.D. Tex. 2010) ...............................................10, 17

*Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech. (USA), Inc.*,
   542 F.3d 1363 (Fed. Cir. 2008) ...............................................................23

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
   986 F.3d 1367 (Fed. Cir. 2021) .........................................................14, 15

*Dow Chem. Co. v. NOVA Chems. Corp. (Can.)*,
   809 F.3d 1223 (Fed. Cir. 2015) .................................................................. 2

*E-Pass Techs., Inc. v. 3Com Corp.*,
   473 F.3d 1213 (Fed. Cir. 2007) .................................................................. 2

*Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*,
   998 F.3d 917 (Fed. Cir. 2021) ....................................................... 2, 4, 5, 6

*Eiselstein v. Frank*,
   52 F.3d 1035 (Fed. Cir. 1995) .................................................................. 20

*Eli Lilly & Co. v. Barr Labs., Inc.*,
   251 F.3d 955 (Fed. Cir. 2001) .................................................................... 2

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) .................................................................. 7

*Hughes Aircraft Co. v. United States*,
   86 F.3d 1566 (Fed. Cir. 1996) (Bryson, J., concurring), cert. granted
   and judgment vacated on other grounds, 520 U.S. 1183, 137 L. Ed. 2d
   680, 117 S. Ct. 1466 (1997).......................................................................3

*In re Kathawala*,
   9 F.3d 942 (Fed. Cir. 1993) .............................................................. 10, 12

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) .................................................................... 7

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
   633 F. Supp. 2d 361 (E.D. Tex. 2009) .................................................... 10

*Meds. Co. v. Mylan Inc.*,
   72 F. Supp. 3d 837 (N.D. Ill. 2014)......................................................... 17

*Munchkin, Inc. v. Int'l Refills Co. Ltd.*,
   IPR2015-00050, Paper No. 7 (P.T.A.B. Apr. 3, 2017) .............................. 4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898, 134 S. Ct. 2120 (2014) ....................................................... 1

*OddzOn Prod., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997) ................................................... 10, 16, 17

*Panduit Corp. v. Dennison Mfg. Co.*,
    810 F.2d 1561 (Fed. Cir. 1987) ........................................................ 10, 16

*Paperless Accounting, Inc. v. Bay Area Rapid Transit Sys.*,
    804 F.2d 659 (Fed. Cir. 1986) ................................................................ 25

*Salazar v. Procter & Gamble Co.*,
    414 F.3d 1342 (Fed. Cir. 2005) .............................................................. 25

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991) .............................................................. 16

*Sonix Tech. Co. v. Publ'ns Int'l Ltd.*,
    844 F.3d 1370, 1378 (Fed. Cir. 2017) ....................................................... 2

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107, 1118 (Fed. Cir. 1985) ....................................................... 6

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) .............................................................. 20

*Vas-Cath Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991) ........................................................ 21, 23

*VLT Corp. v. Unitrode Corp.*,
    130 F. Supp. 2d 178 (D. Mass. 2001) ........................................................ 2

**Statutes**

35 U.S.C. § 28 ............................................................................................. 8

35 U.S.C. § 100(i) ..................................................................................... 20

35 U.S.C. § 101 ......................................................................................... 11

35 U.S.C. § 102 .......................................................................... 10, 16, 17, 20

35 U.S.C. §§ 102 (a), (b), (e), (f) ....................................................... 10, 17

35 U.S.C. §§ 102(a), (b), (e), (g) ............................................................... 17

35 U.S.C. §§ 102 (a)-(g) ........................................................................... 10

35 U.S.C. § 102(b) ..................................................................................... 16

35 U.S.C. § 102(d) ............................................................................ *passim*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

35 U.S.C. § 103 .................................................................................................... *passim*

35 U.S.C. § 282 ......................................................................................... 2, 20

America Invents Act ............................................................................... 18, 20, 21

America Invents Act § 3(n)(1) .................................................................... 20

**Other Authorities**

C.F.R. 1.131 ........................................................................................................ 24

Manual of Patent Examining Procedure § 2159.02 ........................................ 24

# TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | Registered Community Design No. 00079231-0001 (the "Morand Design") |
| Exhibit 2 | *Munchkin, Inc. v. Int'l Refills Co. Ltd.*, IPR2016-01154, Paper No. 13 (P.T.A.B. Dec. 12, 2016), marked as Exhibit 324 at the Deposition of Jeffrey Swan, taken July 25, 2019 |
| Exhibit 3 | The Community Design: A New Right of Design Protection for the European Community, 86 JPTOS 111, February 2004 (https://euipo.europa.eu/ohimportal/en/design-definition#) |
| Exhibit 4 | U.S. Patent No. 8,899,420 B2, marked as Exhibit 3 at the Deposition of Patrick Kane, taken March 20, 2019 |
| Exhibit 5 | U.S. Patent No. 6,974,029 B2, marked as Exhibit 2 at the Deposition of Patrick Kane, taken March 20, 2019 |
| Exhibit 6 | Excerpts of the Transcript of the Deposition of Jeffrey Swan, taken July 25, 2019 |
| Exhibit 7 | Declaration of Expert Jeffrey Swan, marked as Exhibit 316 at the Deposition of Jeffrey Swan, taken July 25, 2019 |
| Exhibit 8 | Excerpts of the Transcript of the Deposition of Michael Jobin, taken August 2, 2019 |
| Exhibit 9 | Expert Report of Jeffrey Swan, served June 14, 2019, marked as Exhibit 311 at the Deposition of Jeffrey Swan, taken July 25, 2019 |
| Exhibit 10 | Defendant's Fourth Supplemental Responses to Plaintiffs' First Set of Interrogatories (Nos. 1-18), served May 24, 2019, marked as Exhibit 263 at the Deposition of Elizabeth Defterderian, taken May 29, 2019 |

| Exhibit 11 | Excerpts of the File History of U.S. Patent No. 8,899,420 B2, marked as 1050 at the Deposition of James Carmichael<br><br>(U.S. Application No. 14/017,842 (the "842 Application")) [2013-11-05 Non-Final Office Action pp. 4-5; 2014-02-05 Claims; 2014-02-05 Response to Office Action at 7; file history pp. 249, 299] |
|---|---|
| Exhibit 12 | U.S. Application No. 12/245,172, (the "172 Application"), which was filed on October 3, 2008 |
| Exhibit 13 | U.S. Application No. 13/324,234 (the "234 Application"), which was filed on December 13, 2011 |
| Exhibit 14 | Plaintiffs' Rebuttal Expert Report of Michael Jobin, served July 12, 2019 |
| Exhibit 15 | The Community Design: A New Right of Design Protection for the European Community, 86 JPTOS 111, February 2004, provided for the convenience of the Court. |
| Exhibit 16 | Excerpts of the Transcript of the Deposition of Glenn May, taken March 24, 2022 |
| Exhibit 17 | Excerpts of the Expert Report of Glenn May, served February 10, 2022, marked as Exhibit 470 at the Deposition of Glenn May, taken March 24, 2022 |
| Exhibit 18 | Excerpts of the Supplemental Expert Report of Michael Jobin on Invalidity, served March 10, 2022, marked as Exhibit 478 at the Deposition of Michael Jobin, taken March 31, 2022 |
| Exhibit 19 | Excerpts of the Opening Expert Report of Michael Jobin, served on June 14, 2019, marked as Exhibit 2001 at the Deposition of Michael Jobin, taken August 2, 2019 |
| Exhibit 20 | Excerpts of the Supplemental Expert Report of Michael Jobin on Infringement, served February 10, 2022, marked as Exhibit 477 at the Deposition of Michael Jobin, taken March 31, 2022 |
| Exhibit 21 | Excerpts of the Rebuttal Expert Report of Glenn May, served March 10, 2022, marked as Exhibit 471 at the Deposition of Glenn May, taken March 24, 2022 |

This Memorandum presents five issues for summary judgment. Resolving these issues now will substantially reduce the complexity of the case and the burden on the Court and jury.

## I.      ISSUE 1: CLEARANCE IS NOT INDEFINITE

Munchkin claims that the term "clearance" is indefinite. In fact, the Federal Circuit has already explained what the term means.

Up until Munchkin's recent shift in position, the term "clearance" was construed and applied throughout the case by Munchkin, Plaintiffs, the Federal Circuit, and even the PTAB. The reason for Munchkin's change in position is clear: following the Federal Circuit's decision, neither Munchkin nor its expert are able to apply the term in a way that avoids infringement. So, Munchkin and its new expert have invented a new theory of invalidity, and now argue that, as a result of the Federal Circuit's guidance, a skilled artisan would find it impossible to "ascertain the definition, scope, or bounds of the claimed 'clearance' with any reasonable certainty" (SUF C1). This is nonsensical. The Federal Circuit spent several pages of its decision explaining the proper scope of the term "clearance." That Munchkin disagrees with this clarification does not render the claim terms indefinite.

As the Federal Circuit recognized in providing the definition of "clearance," the claims of the 420 Patent (in light of the specification and prosecution history) inform, with reasonable certainty, those skilled in the art about the scope of the invention. The claims, therefore, are not indefinite. Accordingly, this Court should grant summary judgment dismissing Munchkin's indefiniteness defense.

### A.      INDEFINITENESS LEGAL STANDARDS RELATED TO ISSUE 1

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901, 134 S. Ct. 2120, 2124 (2014). "Reasonable certainty does not require absolute or mathematical precision." *BASF*

*Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

"[T]he ultimate question of indefiniteness is one of law." *Dow Chem. Co. v. NOVA Chems. Corp. (Can.)*, 809 F.3d 1223, 1224-25 (Fed. Cir. 2015). An "indefiniteness analysis involves general claim construction principles." *Sonix Tech. Co. v. Publ'ns Int'l Ltd.*, 844 F.3d 1370, 1378 (Fed. Cir. 2017). "Courts have noted that "as a question of law for the Court, the definiteness determination is well suited for disposition at summary judgment. This is especially so where, as here, the party opposing summary judgment makes no claim that it possesses additional evidence that could be offered at a *Markman* hearing or at trial." *See, e.g., VLT Corp. v. Unitrode Corp.*, 130 F. Supp. 2d 178, 196 n.14 (D. Mass. 2001) (granting summary judgment dismissing indefiniteness challenge).

"[A] moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Labs., Inc*., 251 F.3d 955, 962 (Fed. Cir. 2001); 35 U.S.C. § 282)).

## B.   ARGUMENT RELATED TO ISSUE 1

When viewed under the proper legal standard and in the full context of the Federal Circuit's decision, the claim language, the specification, and the prosecution history, there is no dispute that the term "clearance" is clearly understood by those of skill in the art. The term is not indefinite simply because Munchkin's infringement expert is no longer able to apply the term in a manner that avoids infringement.

### 1.   The Federal Circuit's construction is the law of the case

The parties have already presented the scope of the term "clearance" to the Federal Circuit. *Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 921 (Fed. Cir. 2021). In doing so, Munchkin never once mentioned indefiniteness. *Id.* The Federal Circuit agreed with this Court's original construction and clarified the scope of "clearance." *Id.* The Federal Circuit's definition of the term is now the law of the case.

*E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1219 (Fed. Cir. 2007) ("A claim construction articulated by a prior panel decision of this court ordinarily remains the law of the case unless it is in conflict with a subsequent decision by this court sitting *en banc* or by the Supreme Court.").

"[I]n patent cases, where Congress has made special provision for interlocutory appeals […] adherence to the law-of-the-case doctrine is especially important, as there are more opportunities for a party dissatisfied with a ruling from one panel to seek a different result from a second." *See Hughes Aircraft Co. v. United States*, 86 F.3d 1566, 1578 (Fed. Cir. 1996) (Bryson, J., concurring), cert. granted and judgment vacated on other grounds, 520 U.S. 1183, 137 L. Ed. 2d 680, 117 S. Ct. 1466 (1997). This Court should follow the Federal Circuit's ruling, grant Plaintiffs' motion for summary judgment, and find that the term "clearance" is not indefinite as a matter of law.

## 2.   Intrinsic evidence shows that "clearance" is not indefinite

The relevant inquiry for indefiniteness, like all claim construction issues, is the intrinsic record: the claims, the specification, and the prosecution history. *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). All three show that the term "clearance" is definite in this case.

First, the independent claims of the 420 Patent explain that the "clearance" (1) is located "in a bottom portion of the central opening" of the cassette, (2) extends "continuously from the annular wall and radially outward of a downward projection of the annular wall," and (3) delimits "a portion of the volume having a reduced width relative to a portion of the volume above the clearance" (SUF C2-C5). Thus, the claims themselves clearly describe both the structure, and location, of the clearance.

This description is further supported by the specification, which locates the clearance "in a bottom portion … of the annular receptacle" and explains that its purpose is "to cooperate with the interfering member for the cassette to be aligned with the top of the bin in a desired orientation" (SUF C6). Figure 7 of the patent also clearly shows the clearance in contact with "an interfering member 70 that has a shape that is complementary to that of the cassette 30 with the chamfer clearance 41" (SUF C7 (noting that due to "the presence of the interfering member 70, the cassette 30 must properly be installed in the holder 26 to be used.")).



Fig. 7

Notably, the examiner also did not have any trouble understanding the term clearance during prosecution (SUF C9). Nor did the PTAB. *Munchkin, Inc. v. Int'l Refills Co. Ltd.,* IPR2015-00050, Paper No. 7 at 3-5, 7, 9-11 (P.T.A.B. Apr. 3, 2017). Nor did this Court. Indeed, in its February 1, 2019 Order, this Court was able to understand the scope of the term "clearance" in light of the intrinsic record (Dkt. 149 at 24). In doing so, this Court also considered the decision of the PTAB, noting that "a technically-savvy panel of the [PTAB] … found that 'a 'clearance' is an area that is provided to ensure that cassette 30 is properly installed within holder 26 when apparatus 10 is in use.'" (*id.* (citing *Munchkin, Inc. v. Int'l Refills Co. Ltd.,* IPR2015-00050, Paper No. 7 at 7 (P.T.A.B. Apr. 3, 2017))). Finally, this Court explained "the PTAB's decision shows that the PTAB [was able to interpret] the clearance" "consistent with the Specification of the '420 Patent" (*id.*).

Further, in its decision, the Federal Circuit reviewed the specification and discussed the construction of "clearance" at length, with no indication that the term was indefinite. Of particular relevance, the Federal Circuit reviewed "multiple embodiments

which discuss the cassette clearance" and "suggest there would be no space [between the cassette and pail] after insertion." *Edgewell*, 998 F.3d at 921. Indeed, "[i]n nearly all of the disclosed embodiments, the specification suggests that the cassette clearance mates with a complimentary structure in the pail such that there is 'engagement.'" *Id.* According to the Federal Circuit, "[t]he clearance limitation is satisfied when the cassette itself is constructed with a clearance"; i.e., a space within the annular receptacle that is configured to prevent interference between the annular wall and another structure. *Id.* This construction "require[s] only that the clearance prevent interference between the cassette and another structure;" a standard which is readily applied by the parties. *Id.* at 920.

### 3. Munchkin repeatedly applied clearance without issue

Although the intrinsic evidence alone shows that the claims are definite, it is worth noting that Munchkin and its first expert repeatedly applied the claim language without issue, before the PTAB, this Court, and the Federal Circuit. Indeed, Munchkin's first litigation expert—Mr. Swan—repeatedly applied this Court's construction of "clearance" to both the accused products and the alleged prior art. For example, when arguing that the Mowers reference includes a clearance, Mr. Swan stated that it disclosed a cassette with a recessed portion "complimentarily shaped to matingly engage the annular raised portion 346 defined by the cover 336" (SUF C8). If, as Munchkin now contends, the term "clearance" is indefinite when applied to structures which make contact, then how was Mr. Swan able to analyze Mowers and allege that it has a clearance? The answer is simple: the term is not indefinite. Likewise, Plaintiffs' expert was (and is) able to understand and apply the term "clearance" (SUF C11-C13).

After recognizing that Mr. Swan's opinions are incompatible with its new theory, Munchkin fired Mr. Swan and hired a new litigation expert, without seeking leave from either Plaintiffs or the Court. Stretching the bounds of reason and ignoring the precedential effect of the Federal Circuit's decision, Munchkin's new expert, Mr. May, now claims that although he understands this Court's construction of the term "in the

1  abstract," the Federal Circuit's decision renders it indefinite (SUF C1).

2          **4.**    **Plaintiffs' infringement contentions do not create**

3          **indefiniteness**

4          Munchkin improperly argues that Plaintiffs' infringement allegations with

5  respect to the Fourth Generation Cassette somehow render the term "clearance"

6  indefinite (SUF C10). But it is a basic principle of claim construction that claim terms

7  should not be interpreted by reference to infringement positions or the accused products.

8  "A claim is construed in the light of the claim language, the other claims, the prior art,

9  the prosecution history, and the specification, *not* in light of the accused device." *SRI*

10  *Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985). "It is

11  only *after* the claims have been *construed without reference to the accused device* that

12  the claims, as so construed, are applied to the accused device to determine

13  infringement*." Id*.

14          **C.**    **CONCLUSION OF ISSUE 1**

15          Plaintiffs request that this Court see Munchkin's indefiniteness defense for what

16  it is: an eleventh-hour tactic to avoid an infringement finding. The Court should follow

17  the Federal Circuit's guidance. All of the evidence and the law of the case points to the

18  conclusion that "clearance" is not indefinite. The intrinsic record, the Federal Circuit's

19  order, Munchkin's previous positions in this litigation and in the IPRs, and Mr. Swan

20  and Mr. Jobin's reports and testimony all show that "clearance" is not indefinite. The

21  Court should find that the 420 Patent is not indefinite as a matter of law.

22  **II.**    <u>**ISSUE 2: INFRINGEMENT OF THE CLEARANCE LIMITATION**</u>

23          Summary judgment that Munchkin's Generation 2, 3, and 4 cassettes infringe the

24  "clearance" limitation of the 420 Patent is appropriate. As an initial matter, the Federal

25  Circuit has already confirmed that Munchkin's Generation 2 and 3 cassettes themselves

26  are constructed with a clearance. *Edgewell*, 998 F.3d at 920 ("There was no dispute

27  that the cassette itself (when not installed in the pail) contained a clearance."). And

28  given the Federal Circuit's rejection of Munchkin's noninfringement argument that the

clearance allegedly disappeared after insertion, law of the case requires a finding that Munchkin's 2nd and 3rd Generation cassettes have a "clearance" as claimed in the 420 Patent.

Tellingly, neither Munchkin nor its new expert ever dispute infringement of the clearance limitation. While Mr. May criticizes the analysis of Plaintiffs' expert Mr. Jobin, Mr. May never disputes that Munchkins Generation 2, 3, and 4 cassettes have at least one "clearance"[1] (SUF D17).

Further, all of Mr. May's opinions relating to a "clearance" are based on an erroneous construction that he made up, rather than following the guidance of the Federal Circuit. Indeed, given his inability to apply the Federal Circuit's guidance, Mr. May claimed that "[t]he best one can possibly do … is to assume that a 'clearance' is a **space created by any geometric feature in the bottom portion of a cassette that fits into a receptacle** (and thus avoids interference), regardless of how such space interacts with the structure of the receptacle" (SUF D2). Not only does this differ from the controlling construction, Mr. May explicitly admits that it is "inconsistent with the District Court's claim construction" (SUF D3). Because Munchkin has failed to apply the correct construction of "clearance" in its consideration of anticipation, obviousness, or infringement, these positions and opinions are neither relevant nor admissible and cannot create a genuine issue of material fact. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (discussing with approval the district court's decision to exclude expert testimony that "attempted to resurrect a claim construction that the district court already rejected"); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) (discussing exclusion of expert testimony that "ignored the court's claim construction" as inadmissible).

Given that Mr. May's testimony regarding a "clearance" relies upon an erroneous

---

[1] Plaintiffs identified two separate "clearances" in Munchkin's 4th Generation Cassette (SUF D18). Munchkin and its expert only dispute that one of the two is a "clearance" (SUF D19).

construction, the only relevant, admissible evidence in this case on the issue is the testimony of Mr. Jobin, who analyzed the accused cassettes and determined, using the correct construction, that Munchkin's Generation 2, 3, and 4 cassettes all include a clearance (SUF D14-D16). Accordingly, summary judgment that all of the accused products infringe this limitation is warranted.

## III.   ISSUE 3: NO INVALIDITY

As with infringement, all of the opinions of Munchkin's expert with regard to the presence or the absence of a "clearance" are based on an erroneous construction that Mr. May made up, rather than the one articulated by the District Court and clarified by the Federal Circuit (SUF D2).  Given that the testimony of Munchkin's expert regarding invalidity is inadmissible, summary judgment is proper, particularly in light of the presumption that patents are valid. 35 U.S.C. § 28.  This is particularly true where, as here, the only admissible evidence at trial will come from Mr. Jobin, Plaintiffs' expert, who reviewed each piece of alleged prior art, and determined that the prior art did not include a clearance under the correct construction (SUF D4-D13).

Given that every independent claim of the 420 Patent includes the term clearance, summary judgment of no prior-art based invalidity is proper for *all claims*.

## IV.   ISSUE 4: THE MORAND DESIGN AND § 102(d)

Summary judgment should be granted on Issue 4 for several reasons.  Pre-AIA § 102(d) applies only where the same "invention was first *patented* or caused to be *patented*" in a foreign country. 35 U.S.C. § 102(d). But the Morand Design is neither the same invention, nor does it convey rights akin to a patent. In fact, the PTAB already considered this very issue and found in favor of Plaintiffs. No reasonable jury could conclude differently.

What's more, recognizing the shortcomings in the Morand Design, Munchkin combines it with other references under § 103 to attempt to create an invalidity argument. This is legally improper because the Morand Design is not "prior art" and thus cannot be used in an obviousness inquiry under § 103.

### A.    STATEMENT OF FACTS RELATED TO ISSUE 4

#### 1.    The 420 Patent

The 420 Patent claims priority to foreign application No. 07019571 (EP), filed October 5, 2007 (SUF A1).  The sole inventor is Michel Morand (SUF A2). The claims of the 420 Patent contain limitations directed to the film in the cassette, including its shape, how it is disposed, and how it is distributed from the cassette (SUF A3-A9).

#### 2.    The Morand Design

On September 17, 2007—two weeks before the priority date of the 420 Patent—an application which led to European Registered Community Design No. 00079231-0001 (the "Morand Design") was filed (SUF A12).  As a registered community design, the Morand Design is simply five figures and a title (SUF A14). It is not a patent. Unlike a utility patent, the Morand Design has no claims and no text describing the utility or function of design (SUF A15). In fact, the only mention of "film"—an important element in the claims of the 420 Patent—is in the translated title (SUF A16).

#### 3.    The USPTO's prior 102(d) determination

On June 3, 2016, Munchkin filed a Petition for *inter partes* review ("IPR") with the USPTO challenging the validity of the 420 Patent under 35 U.S.C. § 102(d) in light of the Morand Design (SUF A17). On December 12, 2016, the PTAB issued a decision denying institution of the IPR (SUF A18). That decision rejected Munchkin's argument that the Morand Design was "prior art" under § 102(d).  The PTAB also found that the Morand Design did not contain the same invention, at least because it failed to describe the film in the same way as the claims of the 420 Patent (SUF A19-A21). Specifically, the PTAB found that the mention of film in the title of the Morand Design, alone, "is not sufficient to convey the particular elongated flexible tubing of the claims, much less the particular configuration of that tubing, i.e., arranged in an accumulated condition with [sic] an annular receptacle" (SUF A20). Munchkin did not appeal that decision.

### B.    LEGAL STANDARDS RELATED TO ISSUE 4

Section 102(d) prohibits an inventor from obtaining a patent more than a year

after filing a related patent application in a foreign country claiming the same invention. 35 U.S.C. § 102(d). To qualify under § 102(d), the foreign filing must: (1) be a foreign patent (or grant rights that are akin to a U.S. patent), and (2) cover the same invention as the U.S. patent at issue. *In re Kathawala,* 9 F.3d 942, 947 (Fed. Cir. 1993).

Section 102(d) is one of seven distinct subsections of pre-AIA 35 U.S.C. § 102, entitled "Conditions for Patentability; Novelty and Loss of Right to Patent." These subsections, §§ 102 (a)-(g), are divided between those directed to "novelty" (*i.e.*, "prior art"), and those directed to a "loss of right." *OddzOn Prod*., 122 F.3d at 1402. Section 102(d) is a "loss of right" provision and is *not* a "prior art" provision. *Id.* The distinction between "loss of right" and "prior art" under § 102 is significant as a reference may not be combined with other prior art under § 103 (obviousness) unless it has first qualified under a "prior art" provision of §102. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) ("Before answering Graham's [§ 103] 'content' inquiry, it must be known whether a patent or publication *is in the prior art* under 35 U.S.C. § 102—a legal question.").

Loss of right provisions, including § 102(d) "have no relation to [35 U.S.C.] § 103 and no relevancy to what is 'prior art' under § 103." *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed. Cir. 1997); (quoting *In re Bass*, 474 F.2d 1276, 1290 (CCPA 1973)). And courts have routinely held that for prior art to render an invention "obvious" under § 103, the alleged prior art must first qualify as "prior art" under § 102 (a), (b), (e), (f), or (g). *Colucci v. Callaway Golf Co.*, 750 F. Supp. 2d 767, 772 (E.D. Tex. 2010) (citing *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 371 (E.D. Tex. 2009) (*citing OddzOn Prods., Inc.* 122 F.3d at 1401-02).

## C.   ARGUMENT RELATED TO ISSUE 4

### 1.   The Morand Design is not a "patent" under section 102(d)

To trigger Section 102(d), the inventor must have first patented or caused the same invention to be patented in a foreign country.  35 U.S.C. § 102(d). Because the Morand Design is not a patent, Munchkin cannot meet the § 102(d) standard as a matter

of law. Summary judgment is appropriate.

The Morand Design is not a "patent" as used in Title 35 of the United States Code. Patents are only given for inventions that are both "new and useful."  35 U.S.C. § 101. European Community Designs, on the other hand, protect "the appearance" of something, such as the contours, colors, shape, text and/or materials of a product (*see* The Community Design: A New Right of Design Protection for the European Community, 86 JPTOS 111 at 112, February 2004) (Exhibit 15 to Broyles Decl.). For example, community designs can be registered on logos, computer icons, fonts, and graphic designs, such as the following:



(SUF A22). As described by the European Union Intellectual Property Office, community designs are used simply to protect "how products look" (SUF A23).

Consistent with this, community designs like the Morand Design contain only a title and figures (SUF A14-A15). There is no description, no disclosure of utility, no explanation of the images, and no description of how the design is to be used (*id.*). In addition, there are no "claims" setting forth an "invention" (SUF A15).  Thus, unlike a U.S. utility patent, a community design cannot be obtained on the utility of a new "invention." Nor is a community design subject to substantive examination like a U.S. patent (*see* Exhibit 15 to Broyles Decl.). The community design is summarily reviewed, only to determine if it (i) relates to a design and (ii) is contrary to public policy (*id.*).

Moreover, while the Federal Circuit has held that in certain limited situations a foreign document other than a patent may qualify under § 102(d), the Federal Circuit has also stated that the foreign rights granted by the document must be "both substantial and exclusive in nature." *See, e.g., in re Carlson*, 983 F.2d 1032, 1036 (Fed. Cir. 1992).

As it relates to the U.S. utility patent (at issue here), the rights conveyed by the European registered community design are not "substantial" for one simple reason. A registered community design does nothing to protect the utility of the design.

Because community designs only protect the design of a product, and not the utility or useful nature of an "invention," a community design does not convey rights synonymous with those of a U.S. utility patent. For this reason, Munchkin's theory under § 102(d) fails as a matter of law. Summary judgment is appropriate.

### 2.     The Morand Design does not disclose the "same invention"

Even if the Court were to find that the Morand Design is a "patent" (it is not), § 102(d) still does not apply because the Morand Design fails to disclose the "same invention" as the 420 Patent. *In re Kathawala*, 9 F.3d 942, 945 (Fed. Cir. 1993) ("the controlling fact for purposes of section 102(d) is that the Greek patent issued containing claims directed to the same invention as that of the U.S. application.").

No reasonable jury could find in Munchkin's favor on this issue. And the PTAB has already found that the Morand Design does not disclose the "same invention." Thus, summary judgment is appropriate.

### a)     The Morand Design does not disclose "an elongated tube of flexible material"

Independent claims 1, 6, and 11 of the 420 Patent recite "an elongated tube of flexible material" (SUF A3-A4). Specifically, they recite "a length of the elongated tube of flexible material disposed in an accumulated condition in the volume of the annular receptacle" (SUF A5). The claims also contain other elements limiting the "elongated tube" (SUF A6-A7). The Morand Design does not disclose these elements.

Neither the title of the Morand Design nor any of its figures disclose "an elongated tube of flexible material" in any shape, form, or accumulation. In fact, the only description of the Morand Design is the title, which translates to "Film cassettes for garbage" (SUF A16). But the title alone does not convey the specific 420 Patent claim limitations, which include the elongated tube shape of a flexible material and its

accumulated disposition within the cassette. Moreover, Munchkin's experts have not offered an opinion that the title alone discloses the flexible material's shape and structure or how it is disposed in the cassette. Munchkin cannot fill that gap with attorney argument.

None of the five figures of the Morand Design depict or disclose the presence, position, or structure of the referenced "film." Indeed, in the only figure of the Morand Design that may provide any detail regarding unseen or obstructed features within the cassette (Figure 1.4 below), the "film" referenced in the title is nowhere to be found:



The figure shows no film, let alone film in the shape of a tube or in an "accumulated condition." Nor does the figure show any information about where the film is located or any indication that the film is disposed within the cassette, all of which are required by the claims of the 420 Patent.

The experts of both parties agree on this point. Munchkin's original expert confirmed that the Morand Design does not disclose a tube of flexible material (SUF A24). In fact, when asked to confirm that the Morand Design "doesn't say anything about a tube being within [the cassette]," he responded "[c]orrect." (SUF A24.). Munchkin has attempted to swap experts (without the approval of the Court or Plaintiffs) in an effort to un-ring this bell. However, Munchkin's new expert has provided nothing more than a general citation to the Morand Design in a claim chart to suggest that the broader claim limitation (including the "elongated tube of flexible material") is disclosed (SUF A42-A46). This testimony should not be given any weight, as it is conclusory and devoid of specificity or analysis. *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) ("We do not accord weight to conclusory expert testimony."). Plaintiffs' expert also agrees that the Morand Design does not show an elongated tube of flexible material (or one that is stored in an accumulated condition) (SUF A38, A39). He stated these features are "not

1 shown at all" (SUF A39).

2     The PTAB agreed. The PTAB found that the Morand Design "does not show or

3 illustrate any elongated tubing" (SUF A19).  The PTAB explained that the "mention of

4 'plastic film' alone is not sufficient to convey the particular elongated flexible tubing

5 of the claims, *much less the particular configuration of that tubing, i.e., arranged in an*

6 *accumulated condition* within the annular receptacle" (SUF A20).

7     Accordingly, there is no genuine dispute between the parties that the Morand

8 Design does not show the "elongated tube of flexible material" or that such a tube is

9 stored in an "accumulated condition," as required by the claims of the 420 Patent.

10     **b)**    **The Morand Design does not disclose "annular opening**

11         **for dispensing the elongated tube"**

12     Independent claims 1, 6, and 11 of the 420 Patent also recite "an annular opening

13 at an upper end of the cassette for dispensing the [elongated tube/tubing] such that the

14 elongated tube extends through the central opening of the annular receptacle to receive

15 disposable objects in an end of the elongated tube" (SUF A6). Even if the Morand

16 Design disclosed an "elongated tube" (which it does not), there is no dispute that it does

17 not disclose an annular opening or anything about how the elongated tube would be

18 dispensed, as required by the 420 Patent claims. According to Munchkin's original

19 expert, the Morand Design does not have "any description shown about how trash bags

20 or film would be dispensed from the cassette" (SUF A26). Plaintiffs' expert agrees. He

21 testified that "the annular opening is not present, so there's nowhere for any tubing to

22 go in or out of this – this cassette" (SUF A39).[2] Thus, there is no dispute. The Morand

23 Design does not disclose the claimed "annular opening for dispensing."

24     Moreover, there is no disclosure about whether film would be pulled through a

25

26 ─────────────

27 [2]  As noted above, Munchkin's new expert has provided nothing more than the

28 conclusory statement that the entire claim limitation is disclosed, somewhere, in the Morand Design, without any elaboration or explanation. Such unsupported conclusions should be disregarded. *cxLoyalty, Inc.*, 986 F.3d at 1378.

central opening of the cassette, as required by the claims. For example, if the film were a single use trash bag, as envisioned by some of the titles of the Morand Design, the film could simply be withdrawn from the cassette and used independent of the cassette. Alternatively, the film could be pulled out of the cassette and then pulled over the outside of the cassette, as explained by Munchkin's original expert:

> Q. Top – so what you're saying is, looking at these figures, you think perhaps the top would be removed, but that doesn't necessarily tell you whether the film is going to go out – up and over the outside or up and into the middle; is that right?
>
> A. Correct.

(SUF A27). Thus, for a second reason, the Morand Design does not disclose the "same invention" as required under 35 U.S.C. § 102(d). Resolving either of these two requirements in Plaintiffs' favor means summary judgment is appropriate.[3]

### c) The "same invention" must be disclosed in a single reference

Because the Morand Design is missing the above elements, Munchkin incorrectly argues that the Morand Design "*may be combined with other prior art references in order to establish* that a later patent is *invalid under Section 102(d)*" (SUF A33, A34, A35). But that contention is backward. The Morand Design must *first* qualify as prior art under § 102 *before* it can be combined with other references under §103. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1577 (Fed. Cir. 1991) ("If it is necessary to reach beyond the boundaries of a single reference to provide missing disclosure of the claimed invention, the proper ground is . . . § 103 obviousness."). It cannot, as Munchkin contends, be combined with prior art under Section 103, in order to meet the requirements under Section 102.

---

[3] Plaintiffs also contend other limitations, such as the limitation of a "clearance" are not present. However, Plaintiffs only need to show one limitation is not present.

### 3.      The Morand Design may not be used under § 103 because it is not prior art

Munchkin also contends that the 420 Patent is *obvious* over the Morand Design when *combined* with other prior art references[4] under § 103 (SUF A32).[5] But for a reference to be used in a § 103 obviousness inquiry, that reference must first qualify as prior art (under a *prior art* subsection of § 102). *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) ("Before answering Graham's 'content' inquiry [under the § 103 obviousness], it must be known whether a patent or publication *is in the prior art under 35 U.S.C. § 102*—a legal question."). As Munchkin and its expert admit, the Morand Design is available *only* under § 102(d) (and it does not qualify as prior art under any *prior art* subsection of § 102 (*e.g.,* § 102(a) or § 102(b)). Thus, by Munchkin's own admission, the Morand Design cannot be used in an obviousness combination under 35 U.S.C. § 103.

Courts have recognized that § 102(d) is a "loss of right" provision, not a "prior art provision." *OddzOn Prod.*, 122 F.3d at 1402. In *OddzOn*, the Federal Circuit explains the history of what types of § 102 art could apply to a § 103 obviousness analysis. The Federal Circuit starts with the premise that pre-1984, the "prior art being referred to in that [§ 103 obviousness] provision arguably included only public prior art defined in subsections 102(a), (b), (e), and (g)." *Id.* at 1403. Due to a change in statute in 1984, Congress added "non-public" prior art under (f) and (g), but not § 102(d). *Id.* Thus, Congress knew how to qualify specific § 102 sub-sections as prior art for a § 103 obviousness analysis and explicitly did not include § 102(d).

The very operation of Section 102(d) makes clear why Munchkin's invocation of

---

[4] Munchkin argues that the 420 patent is obvious over the Morand Registration in view of Applicant Admitted Prior Art ("AAPA") or, alternatively, in view of AAPA and U.S. Patent No. 7,100,767 to Chomik.

[5] As the Court is aware, an obviousness inquiry under § 103 requires combining multiple prior art references because asserted claim limitations are missing from a primary prior art reference.

- 16 -

§ 103 is illogical. If a foreign patent discloses the *same invention* as the U.S. patent, then § 102(d) dictates that the inventor has "lost the right" to pursue patent protection in the US by delaying too long after the foreign filing. At that point, the patent is invalid and obviousness does not come into play.  Other courts have agreed. *See e.g., Colucci*, 750 F. Supp. 2d at 772 (E.D. Tex. 2010) (finding that only "prior art" qualifying under § 102 (a), (b), (e), (f), or (g) may be used under § 103); *Meds. Co. v. Mylan Inc.*, 72 F. Supp. 3d 837, 856 (N.D. Ill. 2014) ("In order for prior art to be used in combination to determine obviousness under 35 U.S.C. § 103, the alleged prior art *must first qualify* as prior art under § 102(a), (b), (e), (f), or (g)."); *see also Bird-B-Gone, Inc. v. Bird Barrier Am., Inc.*, No. 12-cv-178, 2013 U.S. Dist. LEXIS 191316, at *8 (C.D. Cal. Mar. 20, 2013) ("But to support obviousness, the drawing *must still first qualify as prior art* under 35 U.S.C. § 102(a).").

This was the exact conclusion reached by the PTAB when Munchkin presented this argument in the *inter partes review* against the 420 Patent:

> Thus, the guidance offered by the Office indicates a *prohibition* as to the use of § 102(d) in a "prior art rejection." That guidance is consistent with the above-noted explanation of the Federal Circuit in *OddzOn Prod., Inc.* pertaining to § 102(d)'s lack of affiliation with prior art. (SUF A41).

Because the Morand Design does not qualify as "prior art" to the 420 Patent under any provision of § 102, including § 102(d), it cannot be combined with other references to invalidate the claims of the 420 Patent under 35 U.S.C. § 103.  Thus, Plaintiffs respectfully request that the Court enter summary judgment on all of Munchkin's § 103 defenses that include such a combination.

### D.    CONCLUSION OF ISSUE 4

As explained above, summary judgement of no invalidity based on the Morand Design is appropriate because:

- the Morand Design is not a patent under 35 U.S.C. § 102(d);
- the Morand Design does not disclose the same invention as the 420 Patent; and

- as a matter of law, Munchkin cannot combine other references with the Morand Design to invalidate the 420 Patent.

## V.   <u>ISSUE 5: THE 420 PATENT IS PRE-AIA</u>

Summary judgment should be granted on Issue 5, pre-AIA law should be applied to the 420 Patent. Attempting to expand the universe of prior art available to it, Munchkin argues that the Patent Office messed up when it examined the 420 Patent and applied the incorrect law.  Specifically, Munchkin argues that the 420 Patent should have been examined under the provisions of the America Invents Act (the "AIA"), which alters the scope of prior art that can be used to invalidate a patent.  Those provisions of the AIA, however, only apply to applications that have an "effective filing date" after March 16, 2013.  *See e.g., Becton, Dickinson & Co. v. Baxter Corp. Englewood,* 998 F.3d 1337, 1345 n.5 (Fed. Cir. 2021).  The 420 Patent has an effective filing date in 2008. Accordingly, the examiner properly examined the application under the pre-AIA law.

### A.   STATEMENT OF FACTS RELATED TO ISSUE 5

#### 1.   Prosecution of the 420 Patent

The 420 Patent was filed on September 4, 2013, as U.S. Application No. 14/017,842 (the "842 Application") (SUF B2). The 842 Application was filed as a continuation of U.S. Application No. 13/324,234 (the "234 Application"), which was filed on December 13, 2011 (SUF B4). The 234 Application was filed as a division of U.S. Application No. 12/245,172, (the "172 Application"), which was filed on October 3, 2008 (SUF B5). The following figure shows the U.S. chain of priority.



#### 2.   The examiner reviewed the 842 Application under *pre*-AIA law because there is no new matter

At all times during the prosecution of the 420 Patent, the patent examiner

- 18 -

reviewed the 842 Application under *pre*-America Invents Act ("pre-AIA") principles. The examiner stated the application was being examined under the pre-AIA first to invent provisions on November 5, 2013, and again on April 9, 2014 (SUF B12).[6]

The original 172, 234, and 842 Applications that led to the 420 Patent all contained the same figures (SUF B6). In particular, the applications contained Figure 2A (below), as well as cross sectional views of the cassette in Figure 2A (SUF B6):



The 842 Application also initially included the phrase "integrally formed" in the proposed claims. Although this phrase that was not present verbatim in the previous applications in the chain of priority of the 420 Patent, it was depicted clearly in the above figure, as well as other figures (SUF B7). There is also additional support for this element found throughout the specification (SUF B36).

When the 842 Application was filed, the Plaintiffs submitted a letter to the examiner (i) identifying the Mowers reference and (ii) attaching a declaration under CFR 1.131, submitted by Mr. Morand, that "swore behind" the date of the Mowers reference and provided evidence that Mr. Morand invented the subject matter of the 420 Patent before the date of the Mowers reference (SUF B13). That declaration, which is only available under pre-AIA law, was accepted by the examiner and made a part of the file history (SUF B14). Thus, the examiner believed at all times during prosecution that the application that led to the 420 Patent was a *pre*-AIA application.

---

[6] Notably, the examiner even considered whether the term "integrally formed" was new matter but continued examination under pre-AIA law (SUF B8, B9, B12). The applicant amended the claim to remove the integrally formed language and prosecution continued under pre-AIA law.

**B.     LEGAL STANDARDS RELATED TO AMERICA INVENTS ACT**

The Leahy Smith America Invents Act marked a shift in the U.S. Patent system from a "first-to-invent" system to a "first-inventor-to-file" system. Recognizing that there would be pending applications proceeding under the first-to-invent system, the AIA provided that applications will be examined under the pre-AIA versions of 35 U.S.C. §§ 102 and 103 if every claim presented in the application has an effective filing date of March 15, 2013 or earlier. *See* AIA § 3(n)(1); 35 U.S.C. § 100(i).

For a claim in a later-filed application to be entitled to the filing date of an earlier application, the earlier application must provide written description support for the claimed subject matter. *Anascape, Ltd. v. Nintendo of Am. Inc*., 601 F.3d 1333, 1337 (Fed. Cir. 2010). To satisfy the written description requirement, "the disclosure of the earlier application, the parent, must reasonably convey to one of skill in the art that the inventor possessed the later-claimed subject matter at the time the parent application was filed." *Tronzo v. Biomet, Inc*., 156 F.3d 1154, 1158 (Fed. Cir. 1998). The prior application does not need to contain the exact words that are found in the claims. *See Eiselstein v. Frank*, 52 F.3d 1035, 1038 (Fed. Cir. 1995). In fact, an adequate description does not require any particular form of disclosure. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (*en banc*). Nor does it require that the specification recite the claimed invention *in haec verba. Id.*

"A patent is presumed valid, 35 U.S.C. § 282, and this presumption is based in part on the expertise of patent examiners presumed to have done their job." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992). "This presumption . . . may be viewed as a presumption of administrative correctness[] as applied to a new matter determination." *Id*.

**C.     ARGUMENT RELATED TO ISSUE 5**

Munchkin contends that the application leading to the 420 Patent cannot benefit from the earlier applications and thus, must be examined under the AIA (SUF B1). Specifically, Munchkin points to a claim in the application leading to the 420 Patent

that requires the clearance to be "integrally formed" with the cassette body and argues that this concept was not present in the earlier applications. Because of this alleged "new matter," Munchkin contends that the provisions of the AIA should apply to the 420 Patent, which would potentially alter the universe of prior art available to Munchkin.

But whether an application is entitled to pre-AIA treatment depends on whether the claims find support (explicitly or inherently) in the applications to which priority is claimed. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). There is no genuine dispute that the applications leading to the 420 Patent adequately described an "integrally formed" clearance. Both of Munchkin's experts have admitted it.

### 1.   The original 172 Application supports and describes the supposed new matter in Figure 2A

All experts agree that "integrally" formed means formed in one piece (SUF B28; SUF B27; SUF B30). Plaintiffs' and Munchkin's experts also agree that figures from the 172 Application show a cassette formed integrally in one piece (SUF B23; SUF B24; SUF B27). During his deposition, Munchkin's expert testified about Figure 0001.2, from the Morand Design (right, below) (SUF B15), which is virtually identical to Figure 2A from the original 172 Application (left, below) (SUF B6).

 

Specifically, Munchkin's expert was explicitly asked if the cassette from the Morand Design shows a clearance formed integrally with the inner annular wall:

Q. Do you believe that figure shows an annular receptacle having a clearance in the bottom portion of the central opening with the clearance extending from and being *formed integrally* with the inner annular wall?

A. If I look at both views of that drawing, yes.

* * *

1        Q. Yes. What is the basis for your opinion?

2        A. Well, typically, a view – a cross-sectional view helps you understand

3    what a cross-section at any given point would look like. And then the iso.

4    View shows you that the services [sic] are continuous.[7]

5 (SUF B23-B24). This "formed integrally" language is directly from proposed claim 1

6 that Munchkin's expert had previously stated was not supported by the 172 Application.

7 However, the figure that he admitted shows an "integrally formed" clearance is nearly

8 identical to Figure 2A in the 172 Application (SUF B6).  Thus, there can be no serious

9 argument by Munchkin that one shows an "integrally formed" clearance while the other

10 does not.

11    This is also what Mr. Jobin, Plaintiffs' technical expert, concludes. According to

12 Mr. Jobin, "Figures 2A, 3A, and 7 as well as the text describing these figures discloses

13 and adequately describes a chamfer extending from and being *formed integrally* with

14 the inner annular wall" (SUF B25).

15    Thus, there is no genuine dispute that the figure above from the original 172

16 Application (and all subsequent applications) support and adequately describe the claim

17 limitation of "the clearance extending from and being formed integrally with the inner

18 annular wall." Considering all experts' opinions, there is no dispute that originally-filed

19 Figure 2A conveys to the artisan that Mr. Morand had possession of this idea as of the

20 filing date of the 172 Application. *Vas-Cath Inc.*, 935 F.2d at 1563.

21    While the question of whether new matter has been added to an application is a

22 question of fact, that fact is not genuinely in dispute in this case. Both parties' experts

23 agree that one of ordinary skill looking at the priority applications would have

24 concluded that the clearance shown in the figure was extending from and was integrally

25 formed with the inner annular wall of the cassette. *See Commonwealth Sci. & Indus.*

26 *Research Organisation v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1380 (Fed. Cir.

27

28

[7] The 172 application also contains a cross-sectional view of the cassette.

1    2008).

2            **2.    The cassette of the 420 Patent would have been made using a**

3            **process that necessarily results in an integrally formed structure**

4            All of the experts in this case agree: a person of ordinary skill in the art reading

5    the 420 Patent would understand that the cassette of the 420 Patent is made using

6    injection molding, which would have resulted in a single, integrally formed structure

7    (SUF B22, SUF B26, SUF B32-B33).  For example, Munchkin's new expert testified

8    that injection molding would be an "obvious" choice for the body of the cassette and

9    that he was unaware of any such cassette that is not injection molded (SUF B32-B33).

10   Munchkin's expert also agreed that when a cassette is manufactured by injection

11   molding, its components are "integrally formed" (SUF B29).

12           Similarly, when discussing the 029 Patent, Munchkin's previous expert testified

13   that the "tear-off portion is an ***integral*** part of the cover ***because*** it's made as one piece

14   using an ***injection molding process***." (SUF B19-B20, B29) (emphasis added).

15   Munchkin's expert was able to arrive at the conclusion that features of the cassette are

16   formed integrally, even though the 029 Patent "does not go into detail [on] the

17   manufacturing process." (SUF B21).  That's because, the process of injection molding

18   (which results in a single, integrally formed structure) "would most likely be the

19   preferred that manufactured all parts of this cassette." (SUF B22).  This is exactly what

20   Mr. Jobin, Plaintiffs' technical expert, concluded: the cassettes in the patents in suit are

21   manufactured using an injection molded body of a single material and therefore the

22   clearance is integrally formed with the inner annular wall (SUF B26).

23           Given that all experts agree that a person of ordinary skill in the art would

24   understand that the cassettes described in the patents at issue in this case would likely

25   be formed using a manufacturing process that results in a single, integrated housing

26   structure, there can be no question that the disclosures in the 172 Application adequately

27   disclosed a clearance that is "integrally formed" with the rest of the body.

28

### 3.    The patent examiner correctly did his job and applicant did not acquiesce to a new matter rejection.

The application that led to the 420 Patent was examined—at all times—under *pre*-AIA principles (SUF B12)). According to the Manual of Patent Examining Procedure, if new matter was present in the claims then the application should have been examined under *post*-AIA principles (MPEP § 2159.02).

The examiner was aware of the facts *and still examined the application under pre-AIA principles* (SUF B12). Because the application was examined under *pre*-AIA principles, the examiner stated this multiple times, and the examiner is presumed to have done his job, there is a presumption there was no new matter in the 842 Application. *See Brooktree Corp.*, 977 F.2d at 1574. This is further confirmed by the fact that the examiner accepted Mr. Morand's C.F.R. 1.131 declaration swearing behind the Mowers reference (SUF B13). The examiner would only have accepted this declaration if pre-AIA law was in effect.

Finally, it is of no import that the applicant removed the "integrally formed" phrase to which the examiner objected. The applicant's actions do not support any conclusion of "acquiescence" to the new matter objection. The Federal Circuit has held "that an applicant's silence in response to an examiner's characterization of a claim does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1348 (Fed. Cir. 2005); *see also Paperless Accounting, Inc. v. Bay Area Rapid Transit Sys.*, 804 F.2d 659, 663 (Fed. Cir. 1986) (finding no acquiescence to new matter rejection unless a final rejection is made, and a continuation-in-part application is filed).

In other words, the *applicant* must take a position before the PTO for there to be a finding of acquiescence. *Id.* Here, there is no acquiescence because the applicant never took any position to suggest its agreement that new matter was added, and the claim was eventually allowed on grounds unrelated to the examiner's characterization.

**D.     CONCLUSION OF ISSUE 5**

The "integrally formed" language in the application leading to the 420 Patent finds ample support in the written description of the priority applications. Thus, Plaintiffs request that the Court grant Plaintiffs' Motion on Issue 5 and find as a matter of law the 420 Patent is a pre-AIA patent.

1

DATED: May 5, 2022          ALSTON & BIRD LLP

2

3                                      /s/ *Wesley C. Achey*

4                                      Yuri Mikulka (Bar No. 185926)
                                        yuri.mikulka@alston.com
5                                      **ALSTON & BIRD LLP**
                                        333 South Hope Street, 16th Floor
6                                      Los Angeles, CA  90071
                                        Telephone:  (213) 576-1000
7                                      Facsimile:    (213) 576-1100

8                                      James C. Grant (admitted *pro hac vice*)
                                        jim.grant@alston.com
9                                      Keith E. Broyles (admitted *pro hac vice*)
                                        keith.broyles@alston.com
10                                     Wesley C. Achey (admitted *pro hac vice*)
                                        wes.achey@alston.com
11                                     Pamela Holland Councill (admitted *pro hac vice*)
                                        pamela.councill@alston.com
12                                     Joshua M. Weeks (admitted *pro hac vice*)
                                        joshua.weeks@alston.com
13                                     Michael Deane (admitted *pro hac vice*)
                                        michael.deane@alston.com
14                                     Thomas Finch (admitted *pro hac vice*)
                                        thomas.finch@alston.com
15                                     **ALSTON & BIRD LLP**
                                        1201 West Peachtree Street
16                                     Atlanta, GA 30309
                                        Telephone:  (404) 881-7000
17                                     Facsimile:    (404) 881-7777

18                                     ***Attorneys for Plaintiffs***
                                       ***Edgewell Personal Care Brands, LLC,***
19                                     ***International Refills Company, Ltd., and***
                                       ***Angelcare USA LLC***

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Wesley C. Achey, certify and declare as follows:

I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 1201 West Peachtree Street, Suite 4900, Atlanta, Georgia 30309.

On May 5, 2022, I caused a copy of **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served electronically via the Court's CM/ECF system this 5th day of May 2022.

/s/ *Wesley C. Achey*

Wesley C. Achey (admitted *Pro Hac Vice*)